[No. E002518. Fourth Dist., Div. Two. June 3, 1986.]

DENNIS KOEHRER et al., Petitioners, v.
THE SUPERIOR COURT OF RIVERSIDE COUNTY, Respondent;
OAK RIVERSIDE JURUPA, LTD., et al., Real Parties in Interest.

COUNSEL

**COUNSEL**

Redwine & Sherrill, David L. Wysocki and Jody L. Isenberg for Petitioners.

No appearance for Respondent.

Best, Best & Krieger and Barton C. Gaut for Real Parties in Interest.

## Opinion

**KAUFMAN, J.**—The trial court granted defendants' motion for summary adjudication of issues effectively disposing of plaintiffs' causes of action for tortious termination of employment and "bad faith" termination of employment. The court dismissed those causes of action and, in addition, dismissed the entire action as to all but one of the named defendants.

Plaintiffs petitioned this court for a writ of mandate contending defendants' declaration in support of the motion for summary adjudication of the issues was insufficient to establish there were no triable issues of material fact with respect to the causes of action for tortious termination, "bad faith" termination or the other causes of action as to the dismissed defendants. Plaintiffs also contend defendants' motion was in reality a motion for judgment on the pleadings, and that facts sufficient to constitute causes of action against all defendants were properly pled. In the alternative plaintiffs contend they should have at least been afforded an opportunity to amend their complaint.

This court issued an alternative writ of mandate and the matter is now before us for decision.

### Factual Background

Norman D. Ward and Bunnie Louise Ward, the parents of plaintiff Melissa Koehrer, owned three apartment buildings in Riverside County. Plaintiffs Melissa and Dennis Koehrer managed the apartment buildings for Melissa's parents. In 1982, the Wards negotiated a sale of the properties to defendant Oak Capital Corporation (Oak Capital) and perhaps others of the defendants (see discussion, *infra*). A condition of the sale was that defendant buyers would agree to employ plaintiffs to continue to manage the properties for one year. Accordingly, the purchase agreement between the Wards and Oak Capital included a provision that the buyer would negotiate a mutually acceptable employment agreement with plaintiffs.[1]

As a result of the provision contained in the purchase agreement, defendant Oak Surety Management Corporation (Oak Surety) as agent for Oak Riv-

---

[1]The purchase agreement was negotiated and executed on behalf of Oak Capital by defendant David Gribin, president of Oak Capital. The escrow instructions stated one of the properties was to be conveyed to defendants Gribin, Lee M. Manuel, and Oak Capital, with title vested in Oak Riverside Jurupa, Ltd. (Oak Riverside), a limited partnership to be formed by defendants before close of escrow. Gribin and Manuel signed the escrow instructions. The two remaining properties were sold to Oak Mi Casa Fremontia, Ltd. (Oak Mi Casa), a limited partnership of which Gribin, Manuel and Oak Capital were the general partners. These facts pertain to plaintiffs' claims that the defendant entities were alter egos of Gribin and Manuel or of Oak Capital.

erside and Oak Mi Casa, entered into an employment agreement with plaintiffs to manage the three apartment buildings[2] for a period of one year.

Plaintiffs began their employment on April 29, 1983. On August 15, 1983, however, plaintiffs' employment was terminated by a letter, the particulars of which are set forth in the margin.[3]

## Procedural History

As a result of their termination, plaintiffs filed the instant action attempting to state causes of action for declaratory relief, breach of written contract, breach of written third party beneficiary contract, tortious discharge, promissory fraud, and breach of the implied covenant of good faith and fair dealing ("bad faith" discharge).

Defendants answered, but thereafter filed a notice of motion for summary adjudication of the issues pursuant to Code of Civil Procedure section 437c, subdivision (f).

By their motion defendants urged upon the court that plaintiffs did not and could not state a cause of action for tortious discharge because such tort relief is available only to at-will employees, whereas plaintiffs were employed for a specified term of one year, and that in any event there was no indication plaintiffs were discharged for any reason contravening public policy. Defendants urged plaintiffs did not and could not state a cause of action for "bad faith" discharge because defendants did no more than dispute

---

[2] Both Gribin and Manuel executed the employment agreement on behalf of Oak Mi Casa and as agent of Oak Surety. Plaintiffs' salary checks were evidently paid by Oak Capital.

[3] Plaintiffs' employment was terminated by a letter dated August 12, 1983, from the attorneys for defendant Oak Surety Management Corporation. The reasons for plaintiffs' termination were stated in the letter to be: "1. You have not exercised best efforts to obtain tenants and maximize the occupancy rates of the respective properties;

"2. You have not maintained good and businesslike tenant relations;

"3. You have not processed service requests from tenants in a systematic fashion, as required by Section (4)(C) of the Agreement, with the result that several legitimate requests from tenants have not been attended to.

"4. You have allowed the condition of the landscape at the various properties to deteriorate into an unattractive state;

"5. You have not maintained the properties in a good, clean, attractive and safe condition as required by Section (4)(H) of the Agreement.

"6. You have failed to make apartments ready for re-renting within five (5) working days of being vacated, as required in Section (4)(M) of the Agreement.

"As a general comment our instructions are that your whole attitude generally has been uncooperative, unprofessional and not in the best interests of the Corporation.

"By reason of the foregoing matters, Oak Surety Management Corporation has instructed us to inform you, as we hereby do, that it is their position that they are no longer obligated under the Employment Agreement and that the same is hereby terminated."

Plaintiffs were advised to vacate their office no later than August 15, 1983.

their liability under the contract and so did not breach the covenant of good faith and fair dealing; they did not deny the existence of the contract and there was no special relationship between plaintiffs and defendants invoking application of the "bad faith" doctrine. In addition, defendants urged that Oak Surety, as the party to the employment agreement, was the only defendant in privity with plaintiffs and against whom plaintiffs could proceed.

Defendants' motion was supported by a statement of undisputed facts and a single declaration by defendants' attorney incorporating specified portions of the deposition testimony of Melissa Koehrer. The excerpts from Melissa Koehrer's deposition testimony tended to show (1) plaintiffs managed the three apartment buildings for Mr. and Mrs. Ward before the properties were sold to Oak Capital; (2) Mrs. Koehrer realized she might be terminated if she and her husband failed to perform their obligations under the employment contract; (3) a particular instance in which plaintiffs refused to participate in a practice which they felt was improper did not to her knowledge have anything to do with the reason for plaintiffs' termination; (4) plaintiffs did not believe they were denied any rights granted to other employees upon termination; (5) plaintiffs have been unable to find work since they were fired by defendants; and (6) plaintiffs' parents would be able and willing to lend plaintiffs substantial moneys to purchase a business.

The "statement of undisputed facts" stated, among other things, that Oak Riverside and Oak Mi Casa entered into a contract to purchase the properties from the Wards, that a condition of the purchase was a mutually acceptable employment agreement with plaintiffs such that plaintiffs would manage the three apartment complexes for one year, and that plaintiffs knew their employment could be terminated if they did not perform in accordance with the terms of the employment agreement.

Plaintiffs filed written objections and moved to strike portions of defendants' showing in support of the motion for summary adjudication of issues. In particular, plaintiffs asserted the purchaser of the apartment buildings was Oak Capital and disputed the assertion plaintiffs knew they could be fired if they did not perform under the agreement. In opposition to the motion for summary adjudication of issues plaintiffs submitted a declaration of Norman D. Ward in which it was averred that a condition of the sale of the properties was that Oak Capital would guarantee plaintiffs employment as managers for at least one year. The declaration of plaintiff Melissa Koehrer stated she believed plaintiffs were guaranteed a one-year term of employment; plaintiffs believed that they were working for defendant Gribin and Oak Capital, rather than solely for Oak Surety, and her statement in her deposition that she believed that she might be terminated if she failed to

perform under the terms of the agreement was a statement not based upon any legal training or analysis of the employment contract.

After hearing and argument, the trial court ruled that plaintiffs' causes of action for tortious discharge and "bad faith" discharge could not be maintained. It further ruled that defendants Oak Riverside, Oak Mi Casa, Oak Capital, David Gribin and Lee M. Manuel could have no liability on any of the other causes of action and ordered the action dismissed as to all said defendants.

### Discussion

To determine the propriety of the trial court's rulings on the causes of action for tortious discharge and "bad faith" discharge, it is necessary to ascertain the nature and elements of those two causes of action and with respect to the latter, whether an action for "bad faith" can be maintained in the employment contract context.

The opinions in a number of decisions addressing liability for "wrongful discharge" have evinced some ambivalence, if not confusion, as to the legal basis for recovery, often discussing in the same case theories of implied contract, violation of public policy and breach of the covenant of good faith and fair dealing. (See, e.g., *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443 [168 Cal.Rptr. 722].) No doubt part of the confusion is attributable to the undifferentiated use of the term "wrongful discharge." That term is so broad it is inadequate to distinguish between the possible theories and has on occasion, we believe, been indiscriminately applied to situations involving only breach of contract, situations involving a discharge in violation of a fundamental public policy and situations involving breach of the implied covenant of good faith and fair dealing. It would be conducive to proper analysis if courts and lawyers used a different nomenclature to denominate these different situations in which liability is imposed after all on different legal theories. Appropriate nomenclature might be "breach of employment contract" for the true breach of contract cases, "tortious discharge" for the public policy cases and "bad faith discharge" for the cases involving breach of the implied covenant of good faith and fair dealing. We have employed and shall continue to employ those terms throughout this opinion.

1. *Nature and Existence of the Causes of Action*

a. *Tortious Discharge as Distinguished from Breach of Employment Contract*

An important historical fact in the development of this area of the law lies in the differences in the rights, duties and remedies of the employer

and employee where the employment contract is for a specified term and where the contract is for an indeterminate time ("at will"). Labor Code section 2922[4] provides in relevant part "An employment, having no specified term, may be terminated at the will of either party on notice to the other. . . ." Contrastingly, section 2924 as construed by the decisions makes employment for a specified term greater than one month terminable by the employer during the term only for good cause.

But even in an "at will" employment the employer's right to terminate the employee is not unlimited. ■ As pointed out in *Pugh* v. *See's Candies, Inc.* (1981) 116 Cal.App.3d 311 [171 Cal.Rptr. 917], in the context of a termination of an at-will employment, there are certain limitations on an employer's power of dismissal. " 'The mere fact that a contract is terminable at will does not give the employer the absolute right to terminate it in all cases.' (*Patterson* v. *Philco Corp.* (1967) 252 Cal.App.2d 63, 65 [60 Cal.Rptr. 110].) Two relevant limiting principles have developed, one of them based upon public policy and the other upon traditional contract doctrine. The first limitation precludes dismissal 'when an employer's discharge of an employee violates fundamental principles of public policy' (*Tameny* v. *Atlantic Richfield Co.* (1980) 27 Cal.3d 167, 170 [164 Cal.Rptr. 839, 610 P.2d 1330, 9 A.L.R. 4th 314]), the second when the discharge is contrary to the terms of the agreement, express or implied." (*Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d at pp. 321-322.)

*Patterson* v. *Philco Corp.* (1967) 252 Cal.App.2d 63 [60 Cal.Rptr. 110], cited and quoted in *Pugh,* made a similar classification of circumstances which limit the discretion of the employer to discharge an at-will employee. ■ The *Patterson* court stated: "The employer may be subject to damages for terminating the contract at will when such termination would be a violation of (a) public policy [citation],[5] (b) a statute [citations],[6] or (c)

---

[4]All statutory references will be to the Labor Code unless otherwise specified.

Section 2924 provides: "An employment for a specified term may be terminated at any time by the employer in case of any willful breach of duty by the employee in the course of his employment, or in case of his habitual neglect of his duty or continued incapacity to perform it."

[5]*Patterson* cited *Petermann* v. *International Brotherhood of Teamsters* (1959) 174 Cal.App.2d 184 [344 P.2d 25] as an example of a discharge in violation of public policy where the employee was discharged because he refused to commit a criminal act [perjury].

[6]The *Patterson* court cited as examples of discharge in violation of statute *Kouff* v. *Bethlehem-Alameda Shipyard* (1949) 90 Cal.App.2d 322 [202 P.2d 1059] [employee discharged for absenting himself to serve as an election officer, a right protected by section 695 of the Elections Code], and *Lockheed Aircraft Corp.* v. *Superior Court* (1946) 28 Cal.2d 481 [171 P.2d 21, 166 A.L.R. 701] [employees discharged because loyalty to the United States was not established to satisfaction of employer were discharged in violation of Labor Code section 1101, which prohibited employer from (1) preventing employees from participating in politics, or (2) controlling the political affiliations or activities of employees].

when the employee was engaged contractually to serve so long as he performed to the satisfaction of the employer [citation]." (*Id.*, at p. 65.)

The "public policy" limitation and the "violation of statute" limitation pointed out in *Patterson* are in effect two aspects of a single doctrine: fundamental public policy may be expressed either by the Legislature in a statute or by courts in decisional law. Insofar as affording remedies to an employee discharged in contravention of a fundamental public policy is concerned, it is immaterial whether the public policy is proclaimed by statute or delineated in a judicial decision.

The public policy limitation delineated in *Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d 167, and *Pugh* v. *See's Candies, Inc.*, *supra*, 116 Cal.App.3d 311, is the basis for the action of tortious discharge. (See *Shapiro* v. *Wells Fargo Realty Advisors* (1984) 152 Cal.App.3d 467, 475-477 [199 Cal.Rptr. 613]; *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 259-260 [215 Cal.Rptr. 860]; Kornblum, *Defense Insurers Charged with Wrongful Termination of an Agent* (1983) 32 Def. L. J. 555, 560-561 [hereafter cited as Kornblum, *supra*].) ■ That termination of employment in contravention of principles of public policy, whether statutory or nonstatutory, is conceptually a tortious act, not merely a breach of a contractual promise, was explained by the California Supreme Court in *Tameny* v. *Atlantic Richfield Co.*, *supra*, 27 Cal.3d 167, at page 176. "[W]e conclude that an employee's action for wrongful discharge is ex delicto and subjects an employer to tort liability. As the *Petermann* case indicates, an employer's obligation to refrain from discharging an employee who refuses to commit a criminal act does not depend upon any express or implied '"promise[s] set forth in the [employment] contract"' (*Eads* v. *Marks* [(1952)] 39 Cal.2d [807] at p. 811 [249 P.2d 257]), but rather reflects a duty imposed by law upon all employers in order to implement the fundamental public policies embodied in the state's penal statutes. As such, a wrongful discharge suit exhibits the classic elements of a tort cause of action. ■ As Professor Prosser has explained: '[Whereas] [c]ontract actions are created to protect the interest in having promises performed,' '[t]ort actions are created to protect the interest in freedom from various kinds of harm. The duties of conduct which give rise to them are imposed by law, and are based primarily upon social policy, and not necessarily upon the will or intention of the parties. . . .' (Prosser, Law of Torts (4th ed. 1971) p. 613.)"

In *Petermann* v. *International Brotherhood of Teamsters*, *supra*, 174 Cal.App.2d 184, the leading case before the decision in *Tameny*, the plaintiff was discharged because he refused to commit perjury on behalf of his employer. Discharge for refusal to commit a crime was held contrary to

public policy. (*Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d at p. 188.) The result is the same where an employee is discharged because of membership or activity in a labor union (*Glenn* v. *Clearman's Golden Cock Inn* (1961) 192 Cal.App.2d 793, 796 [13 Cal.Rptr. 769]), for the exercise of civil rights (e.g., service as a juror; see §§ 230, 1101), because the employee's wages are garnished (§ 2929), or as a result of discrimination on the basis of age (former §§ 1420.1, 1420.15, now Gov. Code, §§ 12941, 12942).

■ As *Tameny* explained, the theoretical reason for labeling the discharge wrongful in such cases is not based on the terms and conditions of the contract, but rather arises out of a duty implied in law on the part of the employer to conduct its affairs in compliance with public policy, expressed judicially or by statute. Thus, contrary to defendants' contention, there is no logical basis to distinguish in cases of wrongful termination for reasons violative of fundamental principles of public policy between situations in which the employee is an at-will employee and in which the employee has a contract for a specified term. The tort is independent of the term of employment. Discharge for, e.g., exercise of an employee's civil rights, is equally tortious as to an employee with a specified term contract as for an at-will employee. As plaintiffs point out, to hold otherwise would afford the at-will employee a greater remedy than that available to an employee having a contract for a specified term. Obviously, no such distinction can be justified.

The second limitation, noted in *Pugh,* on the employer's right to discharge an at-will employee is "when the discharge is contrary to the terms of the agreement, express or implied." (*Pugh, supra,* 116 Cal.App.3d at p. 322.) Such a contract limitation may take the form of a promise of permanent employment so long as the work is satisfactory (*Rabago-Alvarez* v. *Dart Industries, Inc.* (1976) 55 Cal.App.3d 91, 94 [127 Cal.Rptr. 222]), or some other express or implied promise based on the employer's words, conduct, custom or a combination thereof to terminate the employment only for good cause. (See *Pugh, supra,* 116 Cal.App.3d at pp. 324-327.) Such a promise implied into the employment contract permits an employee under an employment contract for an unspecified term, and thus presumptively terminable at will, to recover for breach of contract if he or she is discharged without good cause. (See *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d 311, 329; *Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 259-260; *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d 467, 479-481; Kornblum, *supra,* 32 Def. L. J. 555, 563.) ■ However, such a wrongful termination constitutes a nontortious "wrongful discharge," a breach of the implied in fact promise to discharge only for good cause and, thus, a breach of the employment contract. The damages

recoverable are limited to those allowed for breach of contract. (See Kornblum, *supra,* 32 Def. L. J. 555, 565-570.)

■ Accordingly, to recover for tortious discharge an employee must plead and prove he or she was discharged for a reason contravening fundamental principles of public policy. Plaintiffs here have pleaded no facts which if proved would establish their discharge was for a reason contravening fundamental public policy, nor is there anything in the declarations filed so indicating. Plaintiffs of course pleaded and urge their discharge was without good cause and thus in contravention of section 2924 (see fn. 4, *ante*), but section 2924 is not a statement of fundamental public policy. It simply permits termination of an employment contract by the employer for cause even when the contract is for a specified term and the term has not expired. (See fn. 4, *ante*.)

The trial court was correct in ruling plaintiff could maintain no action for tortious discharge.

b. *Breach of the Implied Covenant of Good Faith and Fair Dealing*

Distinguishing between tortious discharge and breach of the implied covenant of good faith and fair dealing ("bad faith") in the employment context also appears to have been troublesome. In *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167, an employee was fired for failing to perform certain activities which would have amounted to violations of antitrust laws. The California Supreme Court held the plaintiff's complaint stated a cause of action in tort for wrongful discharge, based on public policy concepts. However, the plaintiff in *Tameny,* in addition to a cause of action for tortious discharge, also attempted to state a cause of action for breach of the implied covenant of good faith and fair dealing. The court declined to determine whether the plaintiff could state a cause of action on that theory, however, because "neither plaintiff nor defendants suggest that the elements of a cause of action for breach of the implied covenant in this context would differ from the elements of an ordinary wrongful discharge action . . . ." (*Id.,* 27 Cal.3d 167, 179, fn. 12.)

The elements do differ, however. ■ If there has been a breach of the implied covenant of good faith and fair dealing and resultant damages, the plaintiff need not also plead and prove a violation of public policy in order to recover. (See *Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 259-260, 262-263; Kornblum, *supra,* 32 Def. L. J. 555, 563-564.)

In *Cleary* v. *American Airlines, Inc., supra,* 111 Cal.App.3d 443, a decision after *Tameny,* the employee claimed he was discharged for engaging

in union organizing activity, a right guaranteed by statute and the California and United States Constitutions. If proved, such a discharge would clearly have been against fundamental principles of public policy and thus tortious even if the employee was otherwise dischargeable at will. Nevertheless, the court discussed the theory of breach of the implied covenant of good faith and fair dealing and indeed appeared to base its decision on that theory at least in part. The *Cleary* court stated: "In the case at bench, we hold that the longevity of the employee's service, together with the expressed policy of the employer, operate as a form of estoppel, precluding any discharge of such an employee by the employer without good cause. We recognize, of course, that plaintiff has the burden of proving that he was terminated unjustly, and that the employer, American Airlines, will have its opportunity to demonstrate that it did in fact exercise good faith and fair dealing with respect to plaintiff. Should plaintiff sustain his burden of proof, he will have established a cause of action for wrongful discharge that sounds in both contract and in tort. He will then be entitled to an award of compensatory damages, and, in addition, punitive damages if his proof complies with the requirements for the latter type of damages. [Citation.]" (*Cleary, supra,* 111 Cal.App.3d at p. 456.)

Manifestly, the concepts of ordinary breach of employment contract (i.e., breach of an implied promise not to terminate except for good cause), tortious discharge (i.e., discharge in violation of public policy), and "bad faith" (breach of the implied covenant of good faith and fair dealing) were rather badly admixed in *Cleary*.[7] ▉ Nevertheless, it appears to be now well established that in appropriate circumstances an action for "bad faith" discharge based on breach of the implied covenant of good faith and fair dealing will lie in the employment context. (*Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 262; see also *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 769, fn. 6 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Tameny* v. *Atlantic Richfield Co., supra,* 27 Cal.3d 167, 179, fn. 12; *Shapiro* v. *Wells Fargo Realty Advisors, supra,* 152 Cal.App.3d 467, 477-479; *Pugh* v. *See's Candies, Inc., supra,* 116 Cal.App.3d 311, 327-328; *Cleary* v. *American Airlines, Inc., supra,* 111 Cal.App.3d 443, 455-456; *Fortune* v. *National Cash Register Co.* (1977) 373 Mass. 96 [364 N.E.2d 1251, 1257]; Kornblum, *supra,* 32 Def. L. J. 555, 561-564; cf. *Wallis* v. *Superior Court* (1984) 160 Cal.App.3d 1109 [207 Cal.Rptr. 203].)

Having concluded that in appropriate circumstances an action for "bad faith" discharge may be maintained, the question becomes what the appro-

---

[7]Indeed, one writer observes: "Exactly how this implied covenant operated in the ultimate holding is unclear." (Kornblum, *supra,* 32 Def. L. J. 555, 561.)

priate circumstances are. The answer to that question lies in several principles enunciated in the "bad faith" cases.

 The law implies in every contract a covenant of good faith and fair dealing. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d 752, 768; *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 818 [169 Cal.Rptr. 691, 620 P.2d 141]; *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032]; *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 429 [58 Cal.Rptr. 13, 426 P.2d 173]; *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198, 68 A.L.R.2d 883].) The covenant of good faith and fair dealing imposes obligations on the contracting parties separate and apart from those consensually agreed to; the obligations stemming from the implied covenant of good faith and fair dealing are imposed by law as normative values of society. (*Gruenberg* v. *Aetna Ins. Co., supra,* 9 Cal.3d 566, 573-574; see also *Neal* v. *Farmers Ins. Exchange* (1978) 21 Cal.3d 910, 920 [148 Cal.Rptr. 389, 582 P.2d 980]; see Cohen, *Reconstructing Breach of the Implied Covenant of Good Faith and Fair Dealing As a Tort* (1985) 73 Cal.L.Rev. 1291, 1307-1309 [hereafter cited as Cohen Comment, *supra*].)

Paraphrasing *Gruenberg:* the obligations imposed by the implied covenant of good faith and fair dealing are not those set out in the terms of the contract itself, but rather are obligations imposed by law governing the manner in which the contractual obligations must be discharged—fairly and in good faith. (*Gruenberg, supra,* at pp. 573-574.) While the specific nature of the obligations imposed by the implied covenant of good faith and fair dealing are dependent upon the nature and purpose of the underlying contract and the legitimate expectations of the parties arising from the contract (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.* (1980) 26 Cal.3d 912, 918 [164 Cal.Rptr. 709, 610 P.2d 1038]; *Egan* v. *Mutual of Omaha Ins. Co., supra,* 24 Cal.3d 809, 818; *California Casualty Gen. Ins. Co.* v. *Superior Court* (1985) 173 Cal.App.3d 274, 283 [218 Cal.Rptr. 817]; *Betts* v. *Allstate Ins. Co.* (1984) 154 Cal.App.3d 688, 705 [201 Cal.Rptr. 528]), those obligations are not the obligations that were consensually undertaken in the contractual provisions, and care must be taken in each case to determine whether the alleged breach is of an obligation imposed by law and thus a tort (*Tameny, supra,* 27 Cal.3d at p. 176) or breach of an obligation consensually created by the parties in the terms of the contract and thus simply a breach of contract (*id.*). In the case at bench, for example, an allegation that defendants' discharge of plaintiffs was without good cause would charge nothing more than a breach of contract.

What then in the employment discharge cases distinguishes a mere breach of contract from a breach of the covenant of good faith and fair dealing?

Again, the answer lies in analysis of the implied covenant. "The essence of the implied covenant of good faith . . . is that '"neither party will do anything which injures the right of the other to receive the benefits of the agreement"' (*Murphy* v. *Allstate Ins. Co.* [1976] 17 Cal.3d [937] at p. 940, quoting from *Brown* v. *Superior Court* (1949) 34 Cal.2d 559, 564 [212 P.2d 878])." (*Commercial Union Assurance Companies* v. *Safeway Stores, Inc.*, *supra*, 26 Cal.3d 912, 918; accord *Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.*, *supra*, 36 Cal.3d 752, 768.)

While the court in *Seaman's* stated it was not necessary to base its decision on the implied covenant of good faith and fair dealing (36 Cal.3d at p. 769), it is difficult otherwise to understand its repeated reference to "good faith" and "bad faith" and a number of commentators suggest that the decision must be understood as resting at least on one aspect of the implied covenant of good faith and fair dealing. (See Cohen Comment, *supra*, 73 Cal.L.Rev. 1291, 1302, fn. 63; Traynor, *Bad Faith Breach of a Commercial Contract: A Comment on the Seaman's Case* (1984) 8 Bus. L. News 1, 10-11.) In any event its language is instructive.

 After pointing out that the covenant of good faith and fair dealing requires that neither party do anything to deprive the other of the benefits of the agreement (*Seaman's, supra*, 36 Cal.3d at p. 768) the court stated: "It is sufficient to recognize that a party to a contract may incur tort remedies when, in addition to breaching the contract, *it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists.* [¶] It has been held that a party to a contract may be subject to tort liability, including punitive damages, if he coerces the other party to pay more than is due under the contract terms through the threat of a lawsuit, made '"without probable cause and with no belief in the existence of the cause of action."' (*Adams* v. *Crater Well Drilling, Inc.* (1976) 276 Ore. 789 [556 P.2d 679, 681].) There is little difference, in principle, between a contracting party obtaining excess payment in such manner, and a contracting party seeking to avoid all liability on a meritorious contract claim by adopting a 'stonewall' position ('see you in court') without probable cause and with no belief in the existence of a defense. Such conduct goes beyond the mere breach of contract. It offends accepted notions of business ethics. (See *Jones* v. *Abriani* (1976) 169 Ind. 556 [350 N.E.2d 635].) Acceptance of tort remedies in such a situation is not likely to intrude upon the bargaining relationship or upset reasonable expections [*sic*] of the contracting parties." (*Seaman's, supra*, 36 Cal.3d at pp. 769-770, italics added.)

In our view the standard developed in *Seaman's* is appropriate to distinguish between the simple breach of an employment contract by discharge of the employee without good cause and a breach of the implied covenant

of good faith and fair dealing affording tort remedies. If the employer merely disputes his liability under the contract by asserting in good faith and with probable cause that good cause existed for discharge, the implied covenant is not violated and the employer is not liable in tort. (*Seaman's, supra,* 36 Cal.3d at p. 770.) If, however, the existence of good cause for discharge is asserted by the employer without probable cause and in bad faith, that is, without a good faith belief that good cause for discharge in fact exists, the employer has tortiously attempted to deprive the employee of the benefits of the agreement, and an action for breach of the implied covenant of good faith and fair dealing will lie. (*Seaman's, supra,* 36 Cal.3d at pp. 769-770; see also *Quigley* v. *Pet, Inc.* (1984) 162 Cal.App.3d 877, 891 [208 Cal.Rptr. 394]; see Cohen Comment, *supra,* 73 Cal.L.Rev. 1291, 1313-1314.) We believe essentially the same standard was set forth, albeit in somewhat more general terms, in *Khanna* v. *Microdata Corp., supra,* 170 Cal.App.3d 250, 262, 263 [breach of good faith and fair dealing established by proof of employer's bad faith action extraneous to the contract coupled with intent to frustrate the employee's contract rights]; see also Cohen Comment, *supra,* 73 Cal.L.Rev. 1291, 1302-1306.)

 We turn now to the facts alleged by plaintiffs, observing that when a motion for summary judgment or summary adjudication of issues effectively operates as a motion for judgment on the pleadings, all facts stated in the complaint will be accepted as true. (*Sparks* v. *City of Compton* (1976) 64 Cal.App.3d 592 [134 Cal.Rptr. 684].)

 In the sixth cause of action charging bad faith discharge, plaintiffs alleged that they fully performed and complied with all duties and conditions required under the employment agreement and that defendants' acts in terminating plaintiffs were intentional, malicious and "*done without probable cause.*" (Italics added.) Additionally, although not technically incorporated into the sixth cause of action, plaintiffs alleged in their fourth cause of action that at the time defendants discharged plaintiffs defendants knew that plaintiffs had fully complied with the terms and conditions of the employment agreement. Obviously, plaintiffs' pleadings can easily be amended to include that allegation in the sixth cause of action.

Under our analysis of the nature and elements of an action for breach of the implied covenant of good faith and fair dealing, the foregoing allegations together with the incorporated allegations concerning the formation and existence of the contract were sufficient to state a cause of action for bad faith discharge. The question then becomes whether in their declarations defendants set forth uncontroverted facts sufficient to negate as a matter of law that defendants discharged plaintiffs without probable cause and in bad faith, that is, without a good faith belief that good cause existed to discharge

plaintiffs. They did not. The only reference to the cause for discharging plaintiffs found in the declarations filed in support of the motion for summary adjudication was a reference to the letter sent plaintiffs enumerating various alleged grounds for their discharge (see fn. 3, *ante*). Neither the letter to plaintiffs, however, nor anything else in the declarations addressed the question of defendants' good faith belief in the existence of the asserted grounds for discharge.

It must be concluded, therefore, that the trial court was in error in ruling no triable issue of fact exists in respect to the cause of action for bad faith discharge.

2. *Dismissal of All Parties Other Than Oak Surety*

The final issue is whether the trial court was correct in ruling that the defenses of all defendants except Oak Surety were established as to all causes of action. It is plain, we think, that the answer is "no."

The basis upon which defendants urged to the trial court that all defendants except Oak Surety should be dismissed from the action was that Oak Surety alone was a party to the employment agreement. The employment agreement itself, however, recites that Oak Surety entered into the agreement as agent for Oak Mi Casa and Oak Riverside. Moreover, plaintiff averred in her responding papers that Oak Capital paid plaintiffs' salaries and that plaintiffs understood that they worked for Gribin and Oak Capital as well as Oak Surety.

An examination of the complaint shows allegations sufficient to place in issue whether some or all of the defendants acted in disregard of the separateness of some or all of the business entities, and/or whether the various defendants acted as agents of each other in the formation and performance of the employment contract and plaintiffs' discharge. In addition, the causes of action for promissory fraud and breach of third party beneficiary contract guaranteeing plaintiffs' employment for one year involved claims against Gribin, Manuel, Oak Capital, and perhaps other defendants.

The moving papers were insufficient to establish lack of agency or to negate alter ego as a matter of law. We conclude therefore that the order dismissing all defendants other than Oak Surety from the action was improvident.

### Disposition

Let a peremptory writ of mandate issue ordering the trial court to vacate its order dismissing the sixth cause of action and dismissing from the action

all defendants except Oak Surety. The alternative writ is discharged. Plaintiffs shall recover costs.

Rickles, Acting P. J., and McDaniel, J., concurred.