**HARTFORD FIRE INSURANCE CO., Plaintiff,**

v.

**KARAVAN ENTERPRISES, INC., et al., Defendants.**

**No. C–85–7953 DLJ.**

United States District Court, N.D. California.

Feb. 25, 1987.

See also 659 F.Supp. 1075.

Elizabeth S. Salveson of the law firm Howard, Rice, Nemerovski, Canady, Robertson & Falk, for defendants at second motion.

## ORDER

JENSEN, District Judge.

Pursuant to a temporary stay of proceedings before the Ninth Circuit Court of Appeals, this Court on February 18, 1987 heard the motion of declaratory defendants-appellants[1] for an order indicating that the Court will entertain a Rule 60(b) motion. Defendants Karavan Enterprises, Inc. ("Karavan") and Karavan president Sarkis Kouzoujian appeared through their counsel, Elizabeth S. Salveson, Esq. Plaintiff Hartford Fire Insurance Co. ("Hartford") appeared through its counsel, Raoul D. Kennedy, Esq. The Court has considered its previous order and the records on file, as well as the parties' oral arguments and papers regarding the current motion. For good cause shown, the Court hereby denies defendants' motion. The following explanation of the Court's ruling includes a review of its previous order.

Following a hearing on cross-motions for summary judgment, this Court on September 24, 1986, 659 F.Supp. 1075 (N.D.Cal. 1986), entered an order of summary judgment declaring that plaintiff Hartford has no duty either to indemnify or to defend its insureds, Karavan and Kouzoujian, in a third-party state-court action charging breach of contract and breach of implied covenant of good faith and fair dealing based upon the alleged wrongful discharge of an employee. The Court ruled, on the basis of a stipulated set of facts, that Kouzoujian's intentional termination of Karavan employee Jay V. Hemming did not constitute an "occurrence" within the meaning of the policy terms.[2] In so ruling, the Court relied on a recent California case involving similar facts, *St. Paul Fire & Marine Ins. Co. v. Superior Court*, 161 Cal.App.3d 1199, 208 Cal.Rptr. 5 (1984). The Court rejected defendants' argument that because Hemming's complaint could possibly be amended to claim damages for unintended harm flowing from the termination, there was a "potential of liability" triggering the duty to defend under the rule of *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966).

On October 24, 1986 defendants timely appealed from the order of summary judgment. On November 6, 1986 counsel for Hemming informed the defendants of Hemming's intention to amend his complaint to add a third cause of action, alleged to be for negligent infliction of emotional distress. Hemming's counsel provided defendants with a copy of the proposed First Amended Complaint, but did not file the document with the state court. At the time of the hearing of this motion the state-court action remains unchanged; the proposed complaint has still not been filed. Upon receiving the proposed amendment, defendants re-tendered defense of the Hemming action to Hartford. Hartford rejected the re-tender on the ground that this

---

[1]. The Court will hereafter refer to defendants-appellants as "defendants" and plaintiff-appellee as "plaintiff."

[2]. The insurance policy issued by Hartford extended basic Comprehensive General Liability coverage for damage caused by an "occurrence,"

which the policy defined as "an accident including continuous or repeated exposure to conditions, which results in bodily injury or property damage *neither expected nor intended from the standpoint of the insured*" (emphasis supplied).

Court had already considered the substance of the new cause of action and determined that it would not fall within the basic coverage of the policy. Subsequently the Ninth Circuit Court of Appeals entered a temporary stay of appellate proceedings to permit defendants to move this Court for an order that it is willing to hear their motion under Federal Rule of Civil Procedure 60(b) for relief from summary judgment.

Defendants base their motion on Federal Rule of Civil Procedure 60(b)(2) and 60(b)(6), and particularly urge this Court to grant their motion and entertain the Rule 60(b) motion in order to further the goal of judicial economy. They argue that the Ninth Circuit should have a record which includes all the evidence relevant to this issue, and that this is only possible if this Court decides the Rule 60(b) motion before the appeal goes forward. As defendants point out, the rule in this circuit is that a district court has no jurisdiction to hear a Rule 60(b) motion concerning a matter under appeal. *Smith v. Lujan*, 588 F.2d 1304, 1307 (9th Cir.1979). The proper procedure is for the party to ask the district court to indicate whether it will entertain or grant such a motion, and then move the appellate court to remand the case. *Crateo, Inc. v. Intermark, Inc.*, 536 F.2d 862, 869 (9th Cir.1976); *Canadian Ingersoll-Rand Co. v. Peterson Products*, 350 F.2d 18, 27 (9th Cir.1965). Defendants note that declining to entertain the Rule 60(b) motion now raises the possibility that they may renew it after the appeal, thereby initiating a second round of trial and appellate proceedings. *See Canadian Ingersoll-Rand Co., supra*, 350 F.2d at 28.

As a threshold matter, the Court entertains serious doubts that defendants can proffer the "newly discovered evidence" required by subsection (b)(2). Hemming has never filed the proposed amendment; at present the First Amended Complaint is only a contingency. Moreover, the proposed amendment is only the articulation of a possible claim already considered by this Court in its previous order. The Court specifically contemplated that Hemming might amend his complaint "to claim damages for unintended harm caused by the termination," Order for Summary Judgment at 4, prior to ruling that there was no coverage under Hartford's policy. Similarly, the Court finds no "extraordinary circumstances" to justify relief under subsection (b)(6). *See Corex Corp. v. United States*, 638 F.2d 119, 121 (9th Cir.1981). The Court is not insensitive to the stated concern for judicial economy, but is not persuaded that denying the motion of defendants will frustrate that goal. As is explained below, the earlier order of summary judgment addressed the same substantive issues which defendants now raise in connection with their Rule 60(b) motion. Thus, it is the belief of this Court that the Court of Appeals already has before it a full record.

Even were defendants to pass the procedural threshold, the Rule 60(b) claim they outline would fail for the same reasons as set forth in the Order for Summary Judgment. Hemming's proposed new cause of action alleges that defendants acted negligently in "wrongfully, summarily and capriciously discharging plaintiff." Proposed First Amended Complaint ¶ 18. Thus, Hemming includes the discharge as an element of his proposed claim for negligent infliction of emotional distress.

It is clear that under California law a wrongful discharge can give rise to damages in both contract and tort. The contours of this developing law are not always precise; however, there is a recent California decision which offers a well-reasoned, comprehensive approach to the theories under which a discharged employee may seek recovery. In *Koehrer v. Superior Court*, 181 Cal.App.3d 1155, 226 Cal.Rptr. 820 (1986), Judge Kaufman examined the development of wrongful discharge law in California, and labeled three analytically distinct causes of action arising out of the act of discharge: "breach of employment contract," "tortious discharge," and "bad faith discharge."

First, an employer incurs purely contractual liability for "breach of employment contract" when she discharges an employee in violation of the terms of either an express or an implied contract. *Koehrer, su-*

*pra,* 181 Cal.App.3d at 1166–67, 226 Cal. Rptr. 820. In *Pugh v. See's Candies, Inc.,* 116 Cal.App.3d 311, 171 Cal.Rptr. 917 (1981), the court discussed the express and implied agreements that operate to limit the employer's right to discharge any employee. As the *Pugh* court explained, even an at-will employee is entitled to rely on a promise, express or implied, that he will be terminated only for good cause. An implied promise of continued employment can be based on the existence of consideration independent of the services to be performed for the employer, or on a variety of factors such as policies or practices of the employer, the employee's longevity of service, the employer's actions or communications reflecting assurance of continued employment, and relevant industry practices. *Pugh, supra,* 116 Cal.App.3d at 324–27, 171 Cal.Rptr. 917.

Second is the "tortious discharge," first delineated in *Tameny v. Atlantic Richfield Co.,* 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980). This cause of action creates tort liability for a discharge which contravenes accepted principles of public policy (whether these principles have been defined by statute or by judicial decision), and applies equally to at-will employees and those employed for a specified term. *Koehrer,* 181 Cal.App.3d at 1164–66, 226 Cal.Rptr. 820.

Third, an employee may recover in tort on a theory of "bad faith discharge." It appears that there can be separate bases for such a claim. First, as the California Supreme Court held in *Seaman's Direct Buying Service, Inc. v. Standard Oil Co.,* 36 Cal.3d 752, 769, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984), any party to a contract will incur tort remedies "when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists." Judge Kaufman recognized an alternative to this bad faith denial of the *existence* of a contract where no contest is raised concerning the contract itself but the employer engages in a bad faith denial of benefits under the contract. This "bad faith discharge" tort is based on the implied covenant of good faith and fair dealing, which requires that neither party do anything to injure the right of the other to receive the benefits of the contract. *Koehrer,* 181 Cal.App.3d at 1169–71, 226 Cal.Rptr. 820. An employer is liable for bad faith discharge when he asserts good cause for discharge "without probable cause and in bad faith, that is, without a good faith belief that good cause for discharge in fact exists." *Id.* at 1171, 226 Cal.Rptr. 820.

Defendants argue that Hemming's proposed First Amended Complaint states both a claim for the intentional act of termination and an independent claim, which the third-party plaintiff says sounds in tort, for "negligent failure to follow disciplinary procedures suggested by an employee handbook." They rely on *Gray v. Superior Court,* 181 Cal.App.3d 813, 226 Cal. Rptr. 570 (1986), for the proposition that an employer can incur negligence liability for breach of a duty of care in dealing with an employee. On the basis of *Gray,* they suggest that even where the employer has good cause to discharge an employee, he might still incur liability for negligent failure to follow certain procedures. But the *Gray* court did not recognize such a tort claim based on an act of discharge yet wholly independent of it.[3] The court simply found that by incorporating the charging allegations of the first five causes of action, plaintiff had inartfully but adequately pleaded "the tort." *Id.* at 822, 226 Cal.Rptr. 570. The *Gray* court was reviewing dismissal of a claim for negligent infliction of emotional distress. Examination of the rest of the *Gray* opinion reveals a claim for breach of implied covenant based upon the asserted violation of personnel policies and practices set out in an employee booklet. An analysis following *Koehrer* and rejecting any argument that the court in

---

**3.** It must be recognized that a rule of tort liability based on failure to follow company procedures, but wholly independent of the act of discharge, suggests no principled limitation on its operation. Defendants have offered no compelling authority that the California courts have contemplated such a far-reaching result.

*Gray* intended to create a new tort independent of the act of discharge reveals that the tort alleged as negligent infliction of emotional distress was in fact for "bad faith discharge" based upon denial of benefits under the contract.

Hemming's proposed cause of action alleges negligent infliction of emotional distress caused by defendants' "wrongfully, summarily and capriciously discharging plaintiff." Even if we assume that the plaintiff's "inartful" pleading led the *Gray* court to define a new tort, there is no question but that in this case the claim pleaded seeks damages for harm flowing from the discharge, which permits the Court to consider, and rule out, theories of potential liability under the insurance policy.

For purpose of insurance coverage the act of discharge is the determinative event. *St. Paul Fire & Marine Ins. Co., supra,* demonstrates that an intentional discharge cannot constitute an unintended or unexpected "occurrence." So, too, negligence claims based on the discharge fall within the ambit of the claim for wrongful discharge. *See St. Paul Mercury Ins. Co. v. Ralee Eng'g Co.,* 804 F.2d 520, 522 (9th Cir.1986). Claims for negligent conduct must be treated analytically as an integral part of the assertedly wrongful discharge. Any alleged harm comes about as an intended or unintended consequence of the conduct of discharge, but in neither case constitutes an "accident ... which results in bodily injury or property damage neither expected nor intended from the standpoint of the insured." *Royal Globe Ins. Co. v. Whitaker,* 181 Cal.App.3d 532, 537–38, 226 Cal.Rptr. 435 (1986).

The Court therefore finds that the assertedly new claim in Hemming's proposed First Amended Complaint falls within the scope of the Order for Summary Judgment entered on September 24, 1986. For this reason the amendment would not, even if filed, present grounds for relief from summary judgment.

Accordingly, for the reasons set forth above, the Court DENIES defendants' mo-tion for an order indicating that it is willing to entertain a Rule 60(b) motion.

IT IS SO ORDERED.