**ELXSI, Plaintiff,**

v.

**KUKJE AMERICA CORPORATION, et al., Defendants.**

**No. C–85–20754–RPA.**

United States District Court,
N.D. California.

Oct. 19, 1987.

Armour, St. John & Wilcox, San Francisco, Cal., for plaintiff.

Alexander L. Brainerd, Bronson, Bronson & McKinnon, San Francisco, Cal., Charles F. Schirmeister, New York City, for defendants.

## ORDER GRANTING MOTION FOR PARTIAL SUMMARY JUDGMENT

AGUILAR, District Judge.

This matter came before the Court on defendants' Kukje America, Venko Corpo-

ration ("Venko"), and Kukje Corporation ("Kukje Korea") motion for partial summary judgment against plaintiff's claim for breach of the covenant of good faith and fair dealing. For reasons explained below, the Court will grant the motion and dismiss with prejudice count two of the First Amended Complaint.

## I. FACTS:

The gravamen of the First Amended Complaint ("Complaint") in this case is a claim for breach of contract. On February 8, 1985, in San Francisco, California, plaintiff Elxsi and defendants Kukje America and Venko entered into a written contract by which Elxsi agreed to sell 222,223 shares of its Series B Preferred Stock to Kukje America through its alter ego/agent Venko. As consideration, Kukje paid to Elxsi—through Venko—the sum of approximately $1.5 million, i.e., $6.75 per share. On the date of February 8, 1985, Elxsi delivered the specified amount of the particular preferred stock into escrow, pursuant to the contract, and received a check for the full amount due. The deal appeared consummated. However, on February 13, 1985, defendants put a stop payment on the $1.5 million check. The stock that had been delivered to escrow was withdrawn and the deal was aborted.

Kukje America's Answer to the original complaint (the "Answer") explains the ostensible motivation for the defendants' actions. Apparently, Kukje Korea was heavily financed by the Government of Korea through government-controlled banks during the years 1983–1984. In 1984, the parent suffered financial difficulties thereby supposedly threatening the stability of the Korean economy. The Answer alleges that on February 11, 1985, the Government of Korea stepped in and placed Kukje Korea in a position "tantamount to a receivership," with full-scale audits of the parent and all of its subsidiaries leading to complete government control of the voting shares of the parent corporation. Allegedly, the stop payment action taken by the President of Kukje America, Mr. Kwon, was the byproduct of Korean government's order to cease all pending transactions and/or closings other than those in the ordinary course of business.

Rejecting any excuses, Elxsi sued Kukje America and Venko in state court under various theories of recovery, including breach of contract. On December 16, 1985, the original complaint was removed to this Court on the basis of diversity of citizenship. As a result of discovery conducted through 1986, plaintiff learned that Kukje Korea was involved in the stop payment of the check. With leave of the Court, Elxsi filed its First Amended Complaint on December 11, 1986, this time naming Kukje Korea as a third defendant. On April 3, 1987, Kukje Korea brought a motion to dismiss for lack of personal jurisdiction. The motion was denied. On May 22, 1987, Elxsi brought a motion for partial summary judgment. The motion was granted on May 26, 1987. At the time of the hearing of the latter motion, the Court raised the issue of Rule 11 sanctions. On August 14, 1987, the Court issued an order granting Rule 11 sanctions against defendants and their attorneys. Having shaken off the sting of sanctions, defendants now move to dismiss plaintiff's claim for breach of the covenant of good faith and fair dealing.

## II. DISCUSSION:

### (A) *The Tort of Bad Faith Denial of Contract:*

In California, the law of the State implies in every contract a covenant of good faith and fair dealing. *Miller v. Fairchild Ind., Inc.,* 797 F.2d 727, 733 (9th Cir.1986); *Seaman's Direct Buying Service v. Standard Oil,* 36 Cal.3d 752, 768, 206 Cal.Rptr. 354, 686 P.2d 1158 (1984). The import of this covenant is that neither party to a contract may take actions that deprive the other of the benefits of the agreement. *Miller,* 797 F.2d at 733, *citing Seaman's,* 36 Cal.3d at 768, 206 Cal.Rptr. 354, 686 P.2d 1158; *see also Koehrer v. Superior Court,* 181 Cal. App.3d 1155, 1169, 226 Cal.Rptr. 820 (1986) (providing references to the major cases in the development of the doctrine).

In *Seaman's,* the California Supreme Court observed that the issue raised on

appeal was "whether, and under what circumstances" a breach of this implied covenant in a commercial contract context gives rise to a tort cause of action. However, this was not the issue addressed by the court. *See Gomez v. Volkswagen of America, Inc.*, 169 Cal.App.3d 921, 928, 215 Cal.Rptr. 507 (1985) (The court did not "decid[e] whether breach of the covenant of good faith and fair dealing would support tort remedies in the ordinary commercial context....); *see also Commercial Cotton Co. v. United Cal. Bank*, 163 Cal.App.3d 511, 516, 209 Cal.Rptr. 551 (1985) ("[T]he Supreme Court found it unnecessary to determine how far, if at all, the doctrine should extend to ordinary commercial contracts....").

The court in *Seaman's* stated that "[f]or purposes of this case it is unnecessary to decide the broad question." 36 Cal.3d at 769, 206 Cal.Rptr. 354, 686 P.2d 1158. Instead, independent of the covenant of good faith and fair dealing, the Court established a new tort for bad faith denial of contract. The contours of this new tort are distilled in the following sentence:

> [A] party to a contract may incur tort remedies when, in addition to breaching the contract, it seeks to shield itself from liability by denying, in bad faith and without probable cause, that the contract exists.

*Id.*

Were this definition all that the California Supreme Court had to say about the new tort of bad faith denial of contract, matters would have been far less complicated. However, the court did not stop at that point. Referring to an Oregon case imposing tort liability on a defendant who used the bad faith threat of suit under a contract to extort payment, the California court stated:

> There is little difference, in principle, between a contracting party obtaining excess payment in such a manner, and a contracting party seeking to avoid all liability on a meritorious contract claim by adopting a "stonewall" position ("see you in court") without probable cause and with no belief in the existence of a

defense. Such conduct goes beyond the mere breach of contract. It offends acceptable notions of business ethics. [citation omitted] Acceptance of tort remedies in such a situation is not likely to intrude upon the bargaining relationship or upset reasonable expectations of the contracting parties.

36 Cal.3d at 769, 206 Cal.Rptr. 354, 686 P.2d 1158.

The major difficulty confronting jurists and commentators trying to understand and apply *Seaman's* is the faithful interpretation of the foregoing passage. The initial sentence above states that the new tort is denial of the *existence of a contract*, while the subsequent passage describes denial of the *existence of liability*. Ultimately, the dilemma involves determining whether the subsequent passage is definitional or descriptive.

This Court's view, and the view of most courts writing on *Seaman's* is that the supreme court intended to and did create a new tort. *See, e.g., Wayte v. Rollins Intern., Inc.*, 169 Cal.App.3d 1, 19–20, 215 Cal.Rptr. 59 (1985); *but c.f., Malmstrom v. Kaiser Aluminum*, 187 Cal.App.3d 299, 321, 231 Cal.Rptr. 820 (1986) (refers to the "holding" in *Seaman's* as being that "bad faith denial of the existence of a contract breaches the duty of good faith and fair dealing."); *see also* 1 Witkin, *Summary of California Law* § 752(i) (1987) (same erroneous view). That tort was defined in the above quoted sentence wherein the court held that tort liability may arise from the denial, in bad faith and without probable cause, of the existence of a contract. The best way to understand the subsequent passage is to view it as dicta merely describing this new tort by analogy. In other words, bad faith denial of the existence of a contract is like stonewalling and goes beyond mere breach of a contract, but the tortious conduct itself is the denial that the contract exists.

A different interpretation of the subsequent passage in *Seaman's* is that it was part of the definition of the new tort. Thus, some courts have construed the subsequent passage in *Seaman's* as a second

definition of the new tort. One court adopting such a viewpoint used the denial of contract and the denial of liability as alternative definitions of the new tort. *See Multiplex Ins. Agency v. Cal. Life Ins. Co.*, 189 Cal.App.3d 925, 235 Cal.Rptr. 12, 21 (1987) ("Under *Seaman's* appellant might be liable for tort damages if appellant denied any liability 'in bad faith and without probable cause, that the contract exists' or denied liability 'without probable cause and with no belief in the existence of a defense (stonewalling).'" *Quoting Seaman's*, 36 Cal.3d at 770, 206 Cal.Rptr. 354, 686 P.2d 1158); *see also Camarena v. Sequoia Ins. Co.*, 190 Cal.App.3d 1089, 1096, 235 Cal.Rptr. 820, 824 (1987).

The conceptual flaw in this latter bidefinitional approach is that it hopelessly blurs the analytical distinction between the new tort and the existing tort of breach of the covenant of good faith and fair dealing. This was pointed out by Justice Kaufman prior to his elevation to the California Supreme Court, in the case of *Koehrer v. Superior Court*, 181 Cal.App.3d 1155, 1171, 226 Cal.Rptr. 820 (1986). Justice Kaufman stated:

> While the court in *Seaman's* stated [that] it was not necessary to base its decision on the implied covenant of good faith and fair dealing [citations omitted], it is difficult otherwise to understand its repeated reference to "good faith" and "bad faith" and a number of commentators suggest that the decision must be understood as resting at least on one aspect of the implied covenant of good faith and fair dealing. [citations omitted]

This observation is illuminating because it exposes the conceptual problem with the bidefinitional approach. Denial of liability in bad faith and without probable cause is squarely within the realm of the covenant of good faith and fair dealing. To deny liability on a contract is to deny the other party the rightful enjoyment of the benefits of the contract. Yet in *Seaman's* and elsewhere, the Supreme Court has clung to certain factor as necessary elements of a cause of action for a breach of the covenant of good faith and fair dealing. If the subsequent passage in *Seaman's* describing denial of liability is taken to be a definition of the new tort, then the court will have subverted its own insistence on those particular predicate facctors for a breach of the covenant cause of action by creating a new tort which mirrors breach of the covenant but without the special factor requirements.

■ Another negative byproduct of the bidefinitional approach whereby a plaintiff could state a claim by alleging bad faith denial of liability rather than denial of the contract is that such claims would almost inevitably require a trial. Summary judgment motions would become futile gestures. The issue of whether a contract itself exists is fairly simple in the commercial context because of the writing requirements of the California Commercial Code, § 2207. The question whether a defendant denied the existence of a contract also is fairly straightforward, simply requiring proof of a denial. Consequently, the question of general bad faith denial of contract is a viable issue for summary judgment. In most cases, at the motion stage the court will be able to rule on whether defendant denied that the contract exists.

On the other hand, where denial of liability is alleged, a court assessing a motion for summary judgment faces a mixed question of law and fact. The first task is to examine the contract and determine its reasonable interpretation. The second and more difficult task is to determine whether the defendants' position vis-a-vis liability is so unreasonable as to constitute bad faith. Beyond that, there must be a good faith defense available to defendants who outrageously, but honestly, believe that they owe no liability under the contract. In other words, there is a serious subjective element to the query of bad faith denial of liability that is almost absent in the context of the denial of a commercial contract itself. Given the requirement in motions for summary judgment that all facts and inferences are to be viewed in the light most favorable to the nonmoving party, *Western Reserve Oil & Gas Co. v. New*, 765 F.2d

1428, 1430 (9th Cir.1985), *cert. denied,* 474 U.S. 1056, 106 S.Ct. 795, 88 L.Ed.2d 773 (1986), summary judgment against a denial of liability claim will be a difficult proposition, regardless of the merits of the claim.

■ In this Court's view, the best reading of *Seaman's,* both conceptually and with deference to the intent of the California Supreme Court, limits the cause of action to denial of the existence of a contract. When only denial of the existence of liability is alleged, the new tort is not implicated. Instead, the question is whether certain special factors are present which permit the plaintiff to claim breach of the covenant of good faith and fair dealing. By this interpretation of *Seaman's* the distinction between the two causes of action is maintained and the integrity of the special factor requirements for stating a breach of covenant cause of action is preserved.

The Court is buttressed in this approach to *Seaman's* by the California Court of Appeal's decision in *Quigley v. Pet,* 162 Cal.App.3d 877, 208 Cal.Rptr. 394 (1984). The contribution of *Quigley* is not that it provides answers to this analytical quandary, but that it asks the correct questions. The facts in *Quigley* involved the rescission of a contract. In applying *Seaman's* to the facts, the court stated:

> The decision to rescind a contract recognizes the contract existence, and threatens its survival. Is the *Seaman's* tort limited to a denial that a contract *ever* existed? Does it include a party's unfounded denial that a contract *now* exists? Assuming the contract (sic) existence is acknowledged, do disputes over its terms and performance become tortious because the party "doth protest too much"? ... As in *Seaman's,* we need not resolve these policy questions. (emphasis in original)

162 Cal.App.3d at 892, 208 Cal.Rptr. 394.

The court in *Quigley* clearly appreciated the distinction between denial of the existence of a contract and denial of liability on a contract. Moreover, the court concluded that the supreme court in *Seaman's* did not go beyond denial of the existence of a contract. In other words, the new tort does not apply to cases wherein "the contractual relationship is admitted." *Id.* This conclusion is consistent with the letter and spirit of *Seaman's* and is the understanding adopted by this Court in ruling here on defendants' motion to dismiss.

### (B) *Breach of the Covenant of Good Faith and Fair Dealing:*

■ *Seaman's* also contained an important discussion regarding breach of the covenant of good faith and fair dealing. The crucial conclusion of this aspect of *Seaman's* is that the California Supreme Court did not jettison the relationship and expectation factors previously associated with claims of breach of the implied covenant of good faith and fair dealing. Hence, California courts since *Seaman's* consistently have analyzed breaches of the implied covenant in terms of analogy to the fiduciary and unequal positions existing between the parties in *Seaman's* and its predecessors.

Once again, the best analysis of *Seaman's* on this point is that of the appellate panel in *Quigley.* The court recognized that what "distinguishes the majority from the dissent [in *Seaman's*] is its avoidance of a broad rule in breach of implied covenant cases which would not depend upon special relationships, justifiable expectations, and public policy." *Quigley v. Pet, Inc.,* 162 Cal.App.3d 877, 891, 208 Cal.Rptr. 394 (1984) (Chief Justice Bird concurred and dissented arguing for a more liberal application of the doctrine). The court in *Quigley* concluded that the reasoning of *Seaman's* contradicted the idea "that whatever the contractual relationship, a bad faith position taken by a contracting party exposes that person to tort liability, including punitive damages." *Id.* Not only was this conclusion not appropriate given the facts of *Seaman's,* said the court in *Quigley,* but the high court was "not ready to abandon special contractual relationships as distinguishing factors." *Id; see also Multiplex Ins. Agency v. Cal. Life Ins. Co.,* 189 Cal.App.3d 925, 235 Cal.Rptr. 12, 18 (1987) (quoting *Quigley* ).

Not surprisingly, then, in the opinions handed down since *Seaman's* the courts of appeal in California have wrestled with analogies to insurance situations. *See e.g., Quigley,* 162 Cal.App.3d 877, 208 Cal.Rptr. 394 (1984) (reversing judgment because parties were two commercial entities with "no special relationship"); *Commercial Cotton,* 163 Cal.App.3d at 516, 209 Cal. Rptr. 557 (1985) (affirming judgment while finding bank-commercial customer relationship has "much in common" with insurance situation in *Egan v. Mutual of Omaha Ins. Co.,* 24 Cal.3d 809, 169 Cal.Rptr. 691, 620 P.2d 141 (1977)); *Caplan v. St. Joseph's Hospital,* 188 Cal.App.3d 1193, 233 Cal. Rptr. 901, 903 (1987) (no special relationship exists between physican and hospital); *Multiplex Ins. Agency v. Cal. Life Ins. Co.,* 189 Cal.App.3d 925, 235 Cal.Rptr. 12, 20 (1987) (no special relationship between insurance company and insurance agent).

Perhaps the single most lucid case exploring the "special relationship" aspect of the covenant of good faith and fair dealing is that of *Wallis v. Superior Court.* 160 Cal.App.3d 1109, 207 Cal.Rptr. 123 (1984). Wallis was a furniture employee laid-off from his job. In issuing a writ reversing the superior court's granting of a demurrer against Wallis' complaint, the court of appeal focused on the characteristics of Wallis' employment contract that resembled qualities of insurance contracts. In a carefully reasoned opinion, the court concluded that five "similar characteristics must be present in a contract" in order for one of the parties to state a cause of action in tort for breach of the covenant of good faith and fair dealing. Those five factors are the following:

(1) the contract must be such that the parties are in inherently unequal bargaining positions;

(2) the motivation for entering the contract must be a nonprofit motivation, i.e., to secure peace of mind, security, future protection;

(3) ordinary contract damages are not adequate, because (a) they do not require the party in the superior position to account for its actions, and (b) they do not make the inferior party "whole";

(4) one party is especially vulnerable because of the type of harm it may suffer and of necessity places trust in the other party to perform; and

(5) the other party is aware of this vulnerability.

160 Cal.App.3d at 1118, 207 Cal.Rptr. 123.

Although *Wallis* is an employment termination case, the court's analysis is equally applicable in any context. Under *Wallis,* a plaintiff who has not at least touched base on all five of these characteristics cannot state a viable claim for breach of the implied covenant. *See Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 735–36 (9th Cir.1986) (applying the *Wallis* factors to wrongful discharge case).

### (C) *The Issues Presented In This Case:*

■ In count two of the Complaint, Elxsi alleges breach of the covenant of good faith and fair dealing. This count is an outstanding example of bare-bones pleading. Plaintiff merely states that "[t]he acts of defendants as alleged herein constitute a breach of the implied covenant of good faith and fair dealing." *Complaint* at § 16. However, there are no acts alleged in the Complaint other than the basic breach of the stock purchase agreement.

Defendants now challenge count two as ripe for disposal via summary adjudication. The Court agrees with defendants' on this point. Plaintiff has not established any of the characteristics of the "special relationship" which California courts have found necessary to establish a prima facie case of breach of the implied covenant. In fact, plaintiff seems prepared to admit that no such special relationship exists. In light of this admission, as well as the lack of any evidence going to show satisfaction of the factors enumerated in *Wallis,* the Court HEREBY GRANTS defendants' motion for summary judgment against count two alleging breach of the covenant of good faith and fair dealing.

### (D) *Elxsi's Position in Opposition:*

■ As has been noted, Elxsi does not contest the fact that they did not have a "special relationship" with any of the de-

fendants so as to meet the standards of *Wallis*. Rather, it is clear that Elxsi has confused a claim for breach of the implied covenant with the new *Seaman's* tort of bad faith denial of contract. This confusion is evident in its papers. As a result, Elxsi's opposition valiantly argues that Elxsi has stated a claim for bad faith denial of contract while calling the claim one for breach of the implied covenant. The flaw in the nomenclature is crucial because the Complaint does not mention bad faith denial of contract. Instead, count two speaks only of breach of the implied covenant. While under ordinary circumstances such a claim might be salvageable through a generous construction, Elxsi's count two is moribund because plaintiff has not and cannot allege that defendants have denied the existence of the Agreement. Defendants do deny liability, but according to the reasoning developed above, this is insufficient to state a *Seaman's* claim. Furthermore, having conceded that no special relationship exists, plaintiff has agreed that it cannot state a claim for breach of the covenant of good faith and fair dealing.

Good cause appearing therefor, count two of plaintiff's First Amended Complaint stating a claim for breach of the covenant of good faith and fair dealing is hereby dismissed with prejudice.

IT IS SO ORDERED.