[No. A029411. First Dist., Div. Five. June 6, 1985.]

SIERRA CLUB, Petitioner, v.
THE SUPERIOR COURT OF THE CITY AND COUNTY OF
SAN FRANCISCO, Respondent;
MONTE REED et al., Real Parties in Interest.

## COUNSEL

Joseph J. Brecher and Berry & Berry for Petitioner.

No appearance for Respondent.

Joseph M. Gughemetti for Real Parties in Interest.

## OPINION

**HANING, J.**—The Sierra Club (Club) is the defendant in an action for malicious prosecution brought by real parties in interest Monte and Barbara Reed, co-owners of the Hill House Inn in the town of Mendocino. The Reeds' action is predicated on a proceeding in administrative mandate brought by the Club against the California Coastal Commission (Commission); the proceeding named the Reeds as real parties in interest, and challenged the Commission's approval of the Reeds' proposed development and expansion of their hotel as violating the provisions of the California Coastal Act. (Pub. Resources Code, § 30000 et seq.)[1] After ordering the matter remanded to the Commission for reconsideration of its decision, the superior court denied Club's petition for administrative mandamus. The Reeds then brought the instant action for malicious prosecution, alleging that the Club had filed the mandate proceeding with malice and without legal grounds. The Club moved for summary judgment, arguing, inter alia, that as a matter of law the Reeds could not establish the necessary element of favorable termination. The superior court denied the motion, and the Club

---

[1]Unless otherwise indicated, all statutory references are to the Public Resources Code.

seeks a writ of mandate to compel the superior court to grant its motion for summary judgment. ■■■ We conclude that because the Club obtained a remand for reconsideration in the administrative proceeding, the Reeds cannot establish the necessary element of favorable termination as a matter of law. Accordingly, we grant the peremptory writ.

We need not set forth in great detail the factual background of the Reeds' proposed development, and the various Commission proceedings which culminated in the mandate action; however, some review of the salient facts is required. In 1972, the Reeds purchased a plot of land on the north side of the town of Mendocino with the intent to construct a 45-unit tourist hotel. Because the land was situated in the California Coastal Zone, the Reeds' proposed development required the approval of the Commission, subject to the provisions of the California Coastal Zone Conservation Act, the statutory precursor of the California Coastal Act. The Reeds' initial proposal was disapproved by the Commission on the ground that the development would have a significant adverse impact on the unique and historic character of the town of Mendocino. In 1975, the Commission approved a modified proposal after several detailed analyses of the development's environment impact had been completed by Commission staff. The new proposal called for only a 22-unit inn to be built under certain conditions consistent with scenic preservation.

The Reeds commenced construction of a 22-unit inn and applied for permission to expand the inn to 45 units. During this time frame the Coastal Zone Conservation Act was automatically repealed by its own terms effective January 1, 1977, and was replaced by the California Coastal Act (Act). (Pub. Resources Code, § 30000 et seq.; see *Pillsbury* v. *South Coast Regional Com.* (1977) 71 Cal.App.3d 740 [139 Cal.Rptr. 760].) The Act declares the California coastal zone to be a "distinct and valuable natural resource" as well as a "delicately balanced ecosystem," and provides a detailed set of guidelines by which developments in the coastal zone must generally conform to protect the natural environment of the zone. (Pub. Resources Code, §§ 30001, 30001.5; *Beach Colony II* v. *Coastal Com.* (1984) 151 Cal.App.3d 1107 [199 Cal.Rptr. 195].) New development must not have significant adverse effects on coastal resources (Pub. Resources Code, § 30250) and must be authorized by a coastal development permit (Pub. Resources Code, § 30600). The Act also provides that each local government lying in the coastal zone prepare a Local Coastal Program (LCP) for the implementation of community-tailored conservation measures consistent with the policies of the Act. (Pub. Resources Code, § 30500 et seq.; *Yost* v. *Thomas* (1984) 36 Cal.3d 561 [205 Cal.Rptr. 801, 685 P.2d 1152].) Under section 30604, no coastal development permit may issue to authorize development which would prejudice the local government's ability to prepare an LCP in conformity with the Act.

While the Reeds' application for a coastal development permit for the inn's expansion was pending, the town of Mendocino began preparation of its LCP. The first draft was completed in 1980. In March of 1981, the staff of the North Coast Regional Coastal Commission recommended that the Reeds' permit be denied, concluding that the proposed expansion would have a significant adverse effect on the environment. (Pub. Resources Code, § 30250, subd. (a).) In particular, the staff concluded that the proposal would adversely affect the coastal environment by detracting from the unique, small-scale community character of the town (§ 30253, subd. 5), by depleting valuable groundwater supplies (§ 30231), and by violating section 30604, subdivision (a)'s requirement that no coastal development permit be issued which would prejudice the local government's ability to prepare an LCP in conformity with the Act. The staff also noted that the number of tourist units proposed exceeded the limitations incorporated in the draft LCP.

The Regional Coastal Commission considered these three factors but concluded that the Reeds' proposed expansion would not violate the Act. The approval was affirmed by the state commission on appeal, again in the face of a staff recommendation of denial. In reaching its decision, the state commission considered the same three factors considered by the regional commission, and concluded that the Reeds' development would not have a significant adverse impact, deplete groundwater supplies, or prejudice the local government's ability to prepare an LCP.

The Club challenged the state commission's approval of the expansion by filing a petition for administrative mandate.[2] The Club's petition focussed on the three factors discussed above and targeted by the Commission staff. The Club alleged that the Commission's determination of the first two factors was not supported by substantial evidence. The Club also alleged that the Commission had breached its duty under section 30604 by approving a development which would prejudice the ability of local government to prepare a proper LCP. In its points and authorities in support of the petition, the Club added the specific argument that the Commission breached its duty by applying the wrong legal standard under section 30604. In approving the Reeds' permit, the Commission had relied on advice of the Attorney General to the effect that under section 30604, prejudice to the preparation of an LCP could *not* be a ground for denial of a coastal development permit if the proposed development itself conformed to the conservation policies embodied in chapter 3 of the Act.

---

[2]Section 30801 provides that "[a]ny aggrieved person" shall have the right to review a decision of the California Coastal Commission by filing a petition for administrative mandate pursuant to Code of Civil Procedure section 1094.5. The term "aggrieved person" is broadly defined, and includes environmental public interest groups. (See, e.g., *Sierra Club, Inc.* v. *California Coastal Com.* (1979) 95 Cal.App.3d 495 [157 Cal.Rptr. 190].)

Upon review of the relevant authority, the superior court concluded that in light of the importance of broad-based community planning and the protracted nature of the preparation process, prejudice to LCP preparation could be a ground for denial even if the proposed development, standing alone, satisfied chapter 3. The court noted that "the preparation of an LCP is a lengthy time-consuming process involving numerous changes and modifications as the proposed LCP winds its way through various local agencies and elected bodies to its ultimate approval or rejection by the commission." After reviewing *Billings* v. *Central Coastal Com.* (1980) 103 Cal.App.3d 729 [163 Cal.Rptr. 288], and *City of San Diego* v. *California Coastal Com.* (1981) 119 Cal.App.3d 228 [174 Cal.Rptr. 5], the court concluded that the pendency of LCP preparation does not mandate a moratorium on development, but does require "a conscious balancing of the protection of coastal resources with development." The court concluded that even though a particular development might comply with the provisions of the Act, permission to develop could be denied pursuant to section 30604 if the development might interfere with the process of LCP preparation. Having determined that the Commission reached its decision under an incorrect interpretation of section 30604, the superior court accordingly remanded the matter to the Commission for reconsideration of its decision approving the permit, in light of the correct legal standard.

On remand, the Commission, in eight pages of proposed findings, discussed the superior court's order in some detail and acknowledged that it had applied the standard which the court had determined to be incorrect. The Commission concluded that under the court's view of the legal standard, a proposed development could be denied if the project, although consistent with chapter 3 of the Act, was not consistent with broader conservation policies embodied in the LCP, which involved "a fundamental decision balancing Coastal Act priorities and policies which would have effects beyond any single proposed project or site."

The Commission reconsidered its decision in light of this standard and noted that since the proceedings in superior court concluded, the LCP had been changed such that the proposed development did not violate the Mendocino community's balancing decision regarding the limits to be imposed on the permissible number of tourist units. Accordingly, the Commission again voted to allow the development.

The parties agree that once the Club obtained the remand for reconsideration, it no longer actively pursued its action in administrative mandate.[3]

---

[3]In their petition for rehearing, real parties contend that they did *not* agree that the Club essentially dropped its administrative action after remand to the Coastal Commission. This contention is simply inaccurate; at oral argument on this matter, it was specifically agreed that the Club basically dropped its case after the remand, a position the Club has consistently

The Club's petition was denied on all grounds after the Commission's approval of the permit on remand. The Reeds then filed the instant suit for malicious prosecution. The Club moved for summary judgment, arguing that there was no triable issue of fact on the issue of malice, and that due to the remand for reconsideration, the Reeds could not establish the element of favorable termination as a matter of law. The Club also raised other arguments, including a constitutional claim of privilege based on the right of the citizenry to petition the government for a redress of grievances. The superior court denied the Club's motion, ruling that there was a triable issue of fact on the Club's "intent . . . in prosecuting the action," i.e., malice, and impliedly rejecting the Club's other contentions. The Club renews its arguments in this petition for writ of mandate. We conclude that the Club must prevail on the question of favorable termination, and do not reach the remaining issues.[4]

██ The elements of a cause of action for malicious prosecution are (1) the institution of an action (2) without probable cause and (3) with malice, (4) termination of the maliciously-brought action in favor of the defendant, and (5) damages resulting from the bringing of the suit. (*Bertero v. National General Corp.* (1974) 13 Cal.3d 43 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Harbor Insurance Co. v. Central National Ins. Co.* (1985) 165 Cal.App.3d 1029 [211 Cal.Rptr. 902].) ██ A termination is "favorable" if it hinges on a determination of the merits of the action, pertinent to the guilt or fault of the defendant, and not on a technical procedural ground unrelated to fault, such as laches. (*Asia Investment Co. v. Borowski* (1982) 133 Cal.App.3d 832 [184 Cal.Rptr. 317, 30 A.L.R.4th 561].) ██ Favorable termination is a necessary element because the very essence of a malicious prosecution action is the bringing of an unwarranted or unjustifiable action against the defendant. (*Cowles v. Carter* (1981) 115 Cal.App.3d 350, 354-355 [171 Cal.Rptr. 269].)

---

taken before this court. Real parties have not disputed this point until their petition for rehearing, in which they deny that the Club ceased active pursuit of its case after the remand. The rehearing petition presents us with a three-page "post-remand brief" purportedly filed by the Club in superior court. This brief has not been part of the record in this writ proceeding, and its presence in the case is inconsistent with the Reeds' position up to this point. In any case, we are not persuaded that the three-page, clearly hastily written "post-remand brief," brought to our attention for the first time on rehearing, is material to our analysis of the Club's argument. After its extensive filings and arguments in superior court, the Club obtained a remand for substantive reconsideration of the permit issuance, and then essentially dropped its case. The Club did little else, save for perfunctory acts, until the official, formal demise of its mandate action.

[4]The Reeds argue in their return that the Club's petition for writ of mandate is defective for failing to provide this court with a complete record of the summary judgment proceedings in superior court. (See *Star Motor Imports, Inc. v. Superior Court* (1979) 88 Cal.App.3d 201 [151 Cal.Rptr. 721]; *Lemelle v. Superior Court* (1978) 77 Cal.App.3d 148 [143 Cal.Rptr. 450].) The Reeds did not pursue this contention at oral argument. Since the Reeds have provided this court with the missing materials, they have themselves cured any defect in the record. In any case, we have concluded that the items not included in the Club's record are not material to our consideration of the petition.

■ The Club argues that the Reeds cannot establish the element of favorable termination because the Club's action was not unwarranted or unjustified, and that the Club in essence prevailed in its mandamus action because it "won" a remand to the Commission for reconsideration in light of the correct legal standard. The Reeds counter this argument by stressing that the Club ultimately lost the mandamus action, and that the Club's action did not succeed in preventing the development from occurring.[5]

The Reeds' argument is not without some persuasive force. If the phrase "favorable termination" is given a strictly literal interpretation, the Club's ultimate loss of the administrative mandamus action could be construed as "favorable termination" in favor of the Reeds. Close scrutiny of this position, however, dispels its superficial appeal, and demonstrates that the Reeds' argument ignores both the policies underlying the recognition of the malicious prosecution as a cause of action and the true nature of a proceeding in administrative mandamus.

Under Code of Civil Procedure section 1094.5, a party challenging a decision of an administrative agency is limited to three areas of inquiry: whether the agency acted in excess of its jurisdiction; whether there was a fair hearing before the agency; and whether the decision amounts to a prejudicial abuse of discretion. Subdivision (b) of the statute provides that a prejudicial abuse of discretion is established "if the [agency] has not proceeded in the manner required by law, the order or decision is not supported by the findings, or the findings are not supported by the evidence."

The Club's administrative mandamus petition challenged the community-character and groundwater issues on the basis of an alleged lack of substantial evidence in the administrative record. The LCP issue, however, was pled and argued in the points and authorities not only in terms of substantial evidence, but in terms of a breach of duty in failing to follow the correct legal standard under section 30604. However loosely the Club's arguments may have been referred to in other contexts as being based on substantial evidence only, it is clear that the superior court regarded the LCP issue as one involving the correctness of the legal standard applied under the pertinent section of the Act. In our judgment this is a legal issue speaking to whether the agency "proceeded in the manner required by law," by correctly interpreting a governing statute. (See Cal. Administrative Mandamus

---

[5]The Reeds also consistently refer to the remand as one of "clarification" not reconsideration, suggesting that the Club's victory was not a substantive one. The characterization of the remand as "for clarification" is wholly unsupportable by the record. The superior court's order unequivocally calls for substantive reconsideration of the Reeds' permit application on its merits and in light of the correct legal standard regarding LCP preparation. The order also directs that the Commission either approve or not approve the permit. The Commission's eight-page "Proposed Findings" clearly indicate a reconsideration on the merits. The remand was clearly not simply for purposes of clarification.

(Cont.Ed.Bar 1966) § 5.13, see also *Medlock Dusters, Inc.* v. *Christensen* (1973) 35 Cal.App.3d 565 [110 Cal.Rptr. 805].) In short, the Club's argument was that the Commission's proceedings approving the permit were defective because the Commission had applied the wrong standard to assess the evidence before it. The resolution of this issue necessarily precedes the issue of whether the agency's findings under the *correct* legal standard would be supported by substantial evidence.

Given the nature of the Club's contention, it is difficult to conclude otherwise than that the Club essentially prevailed on its challenge based on the LCP issue. The Club sought a judicial determination that the proceedings before the Commission and resultant approval of development were defective under the law, and needed corrective action. By showing that the wrong standard had been applied, and by obtaining the remand for reconsideration, the Club essentially prevailed in the administrative mandate action even though its petition was ultimately denied. ■ The purpose of administrative mandate is to review a decision of an administrative agency, and such review may be based on defects in procedure as well as substance. It is a proper function of administrative mandate to obtain a reconsideration of a challenged decision that was made under an erroneous interpretation of the law. (See *Medlock Dusters, Inc.* v. *Christensen, supra,* 35 Cal.App.3d 565; California Administrative Mandamus (Cont.Ed.Bar Supp. 1984) § 14.10.) ■ The petitioner in such an action may be considered successful if the agency is compelled to reconsider its action, even if the agency eventually reaches the same result.

By virtue of the remand for reconsideration, the Commission was forced to reconsider its decision under the correct interpretation of the law. The Club thus obtained a favorable ruling on its procedural challenge to the issuance of the coastal development permit.[6] We conclude that for purposes

---

[6]The Reeds allege that the Sierra Club somehow obtained its remand through the "false representations" that the local government of Mendocino did not approve the development, and that the development was certain to be disapproved as violating the local government's LCP. The Reeds contend that the Mendocino Board of Supervisors in fact approved of the development. The Reeds' claim of deliberate misrepresentations is not supported by the record, which also reveals that the history of the project's interaction with local officials was contained in the administrative record before the superior court. Moreover, the argument misses the point. A local coastal program is not simply the embodiment of the will of the board of supervisors; the plan's preparation requires "full consultation with the commission and with full public participation," (§ 30500.) The LCP must also be certified by the Commission. (Pub. Resources Code, § 30512.1 et seq.) The administrative record shows that public hearings had been held on the plan and that the viewpoints of citizen interest groups were under consideration; moreover, the plan had been criticized and redrafted in a collective effort on the part of the government and the citizens of Mendocino.

The Reeds argue that the Club did not actually seek a remand, but prayed for the greater relief of the setting aside of the permit approval. The Club's petition, however, prayed for "other relief as may be just and appropriate"; the issue of the Commission's use of the incorrect legal standard was argued to the superior court. Remand for reconsideration under the proper standard was clearly within the ambit of the Club's action.

of an action for malicious prosecution, the remand on grounds urged by the Club precludes any showing of the necessary element of favorable termination. Since the Club's summary judgment motion demonstrated that favorable termination was a complete defense to the Reeds' cause of action, the Club was entitled to a defense judgment as a matter of law. Accordingly, the motion for summary judgment should have been granted. (See *City of Los Angeles* v. *City of Artesia* (1977) 73 Cal.App.3d 450 [140 Cal.Rptr. 684]; *Keylon* v. *Kelley* (1961) 188 Cal.App.2d 490 [10 Cal.Rptr. 549].)

This conclusion is consistent with the policies underlying the cause of action for malicious prosecution. ■ Its purpose is to deter the filing of unwarranted, groundless litigation. In a case such as this one, the cause of action should not lie. The Club was entitled to bring its petition to essentially enforce the review of the Reeds' permit application in light of the correct interpretation of law. To allow an action for malicious prosecution in light of the Club's successful attempt to make the Commission follow the law would be a wholly unwarranted departure from the accepted policies underlying malicious prosecution actions, and would seriously chill the rights of anyone seeking to enforce procedural purity in administrative proceedings. It would be anomalous indeed to render such challenges subject to suits for malicious prosecution when the challenger succeeds in enforcing the correct procedure before the agency, but nevertheless loses on the merits. We are not inclined to sanction such a result.

Having determined that the Reeds cannot establish the necessary element of favorable termination, we grant the peremptory writ without reaching the remaining issues raised in the petition. Let a peremptory writ of mandate issue compelling respondent superior court to vacate its order denying petitioner's motion for summary judgment, and to enter a new and different order granting said motion and entering summary judgment for petitioner.

Low, P. J., and King, J., concurred.

A petition for a rehearing was denied July 3, 1985, and the opinion was modified to read as printed above.