[No. D004301. Fourth Dist., Div. One. Mar. 31, 1987.]

MANUEL ROMO CAMARENA, Plaintiff and Appellant, v. SEQUOIA INSURANCE COMPANY et al., Defendants and Respondents.

**COUNSEL**

Milton J. Silverman, Sr., for Plaintiff and Appellant.

Hollywood & Neil, William K. Day, Lewis, D'Amato, Brisbois & Bisgaard, Alan E. Greenberg and Patricia E. Mundy for Defendants and Respondents.

OPINION

LEWIS, J.—

I

PROCEEDINGS BELOW

Plaintiff Manuel Romo Camarena is also the plaintiff in another lawsuit, Camarena v. Hunt, San Diego Superior Court No. 367576, in which he seeks recovery from James Randall Hunt and his uncle Raymond Hunt for personal injuries suffered in an automobile accident. In this proceeding Camarena alleges that the Hunts' insurer and the attorney retained by the insurer to defend the Hunts maliciously prosecuted a declaratory relief action against him and James Hunt. The court below found that the judgment in the declaratory relief action, although it denied the insurer's request to be relieved from any liability to Camarena, would not support a malicious prosecution action. We disagree.

II

PROCEDURAL HISTORY

1. The Personal Injury Action

Camarena sued the Hunts on June 2, 1975. At the time of the automobile accident which gave rise to Camarena's complaint, James Hunt was driving a car he had borrowed from Raymond Hunt. Raymond was insured by Sequoia Insurance Company (Sequoia) and Sequoia retained an attorney to defend both Hunts.

James Hunt's relationship with the attorney retained to represent him was not harmonious. Although James was interviewed by one of the insurer's investigators and provided answers to Camarena's first set of interrogatories, counsel was not satisfied with the answers he received from James to Canarena's second set of interrogatories. Counsel never served any of James's second set of answers on Camarena. Rather, in response to Camarena's motion to impose sanctions for failure to provide the second set of answers, counsel suggested that the court order James's answer stricken. The trial court eventually adopted counsel's suggestion.

2. The Declaratory Relief Action

On June 13, 1979, Sequoia sued James and Camarena for declaratory relief, asking for a judgment relieving it of any further duty to defend or

indemnify James. Sequoia alleged that in failing to provide appropriate answers to the second set of interrogatories, James breached his duty to cooperate with Sequoia. Camarena filed an answer and was represented by counsel at trial. Under cross-examination at the declaratory relief trial, counsel conceded that Sequoia's potential liability for Raymond's conduct in loaning the car to James was limited to $15,000, while its potential liability for James's conduct was $100,000. He further conceded that he told Sequoia's representatives that the company might be better off defending Raymond alone.

The trial court found counsel's representation of James's interests somewhat unusual. It found no failure to cooperate and entered a judgment requiring that Sequoia defend and indemnify James. Sequoia appealed from the declaratory relief judgment. On March 23, 1982, this court affirmed. Thereafter the Supreme Court denied hearing.

3. The Present Proceeding

After the declaratory relief judgment was final, Camarena brought this action alleging malicious prosecution, bad faith and abuse of process. The trial court sustained demurrers to the bad faith and abuse of process claims. Defendants then answered the complaint.

Camarena moved for an order granting him a summary adjudication of issues. Among other things he asked the trial court to find as a matter of law that the declaratory relief proceeding was a prior action which had been terminated in his favor.

The defendants filed cross-motions for summary judgment in which they asked the trial court to determine that the declaratory relief proceeding would not support a malicious prosecution claim and had not been terminated in Camarena's favor. The trial court agreed, denied Camarena's motion and entered a judgment in favor of the defendants. Camarena filed a timely notice of appeal. We reverse with instructions to enter an order determining that the declaratory relief proceeding was a prior action which terminated in Camarena's favor.

III

DISCUSSION

The plaintiff in an action for malicious prosecution must show (1) the institution of an earlier action, (2) that it ended in his favor and (3) that it was brought with malice and without probable cause and that the plaintiff

suffered legally compensable harm. (*Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 50 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878]; *Chauncey* v. *Niems* (1986) 182 Cal.App.3d 967, 973 [227 Cal.Rptr. 718]; *Harbor Ins. Co.* v. *Central National Ins. Co.* (1985) 165 Cal.App.3d 1029, 1036 [211 Cal.Rptr. 902].) On appeal Camarena challenges the trial court's conclusions with respect to the first two of these elements.

### A. *Institution of an Earlier Action*

#### 1. "Separate Proceeding"

Not every person who unsuccessfully and maliciously invokes the power of a judicial or quasi-judicial body is subject to liability for malicious prosecution. (*Chauncey* v. *Niems, supra,* 182 Cal.App.3d at p. 974.) Courts have concluded that in some contexts the resort to judicial power does not warrant still further litigation. (*Ibid.*)

As the parties point out, there are no reported cases which have held that prosecution of a declaratory relief action will support later tort liability.[1] However, the opinions in *Twyford* v. *Twyford* (1976) 63 Cal.App.3d 916 [134 Cal.Rptr. 145], and *Chauncey* v. *Niems, supra,* 182 Cal.App.3d 967, provide a useful analytical framework. In determining whether a "prior action" had occurred, those cases looked to several factors: whether there was a "separate proceeding," whether it was adversarial, and the expense and trauma of preparing a response. (*Twyford* v. *Twyford, supra,* at pp. 922-923; *Chauncey* v. *Niems, supra,* at p. 967.) In *Twyford* the court concluded that postjudgment service of a request for admissions did not meet these criteria and hence would not support a malicious prosecution complaint. In *Chauncey,* however, the court found that both an order to show cause regarding contempt and an order to show cause regarding modification, filed in a dissolution proceeding, will support a later tort claim.

In this case, Sequoia filed a complaint, served Camarena with a summons, took him to trial, appealed to this court and sought review in the Supreme Court. In the meantime Camarena's personal injury lawsuit was tried once, the judgment reversed on appeal and it is again pending in the superior court. Thus, although related to the personal injury lawsuit, Sequoia's declaratory relief action assumed a procedural life of its own. This history demonstrates that the declaratory relief action was not only an independent proceeding but an adversarial one as well. The vigor with which Sequoia pursued its position also suggests that in preparing a response

---

[1]But see *Pond* v. *Insurance Co. of North America* (1984) 151 Cal.App.3d 280 [198 Cal.Rptr. 517], which assumes, without deciding, that an unsuccessful declaratory relief action will give rise to a malicious prosecution claim.

Camarena incurred substantial expense. Given these circumstances and the principles set forth in *Twyford* and *Chauncey,* it is plain Sequoia's declaratory relief proceeding was substantial enough to support a malicious prosecution claim.

## 2. Public Policy

█  Notwithstanding the time, expense and aggravation involved in responding to Sequoia's declaratory relief action, Sequoia argues that as a matter of public policy we should hold that declaratory relief proceedings do not give rise to claims for malicious prosecution. Like Sequoia, we believe that by allowing parties to determine their contractual obligations before there has been any breach, the declaratory relief available under Code of Civil Procedure section 1060 serves the public interest. However, we do not accept the argument that eliminating potential liability for malicious prosecution is the best way of protecting access to Code of Civil Procedure section 1060.

Although malicious prosecution has been labelled a "disfavored action" (*Babb* v. *Superior Court* (1971) 3 Cal.3d 841, 847 [92 Cal.Rptr. 179, 479 P.2d 379]; *Sebastian* v. *Crowley* (1940) 38 Cal.App.2d 194, 202 [101 P.2d 120]), the damage to individuals and society caused by the pursuit of groundless claims should not be underestimated. As the Supreme Court in *Bertero* v. *National General Corp, supra,* 13 Cal.3d at pages 50-51, said: "The malicious commencement of a civil proceeding is actionable because it harms the individual against whom the claim is made, and also because it threatens the efficient administration of justice. The individual is harmed because he is compelled to defend against a fabricated claim which not only subjects him to the panoply of psychological pressures most civil defendants suffer, but also to the additional stress of attempting to resist a suit commenced out of spite or ill will, often magnified by slanderous allegations in the pleadings. In recognition of the wrong done the victim of such a tort, settled law permits him to recover the cost of defending the prior action including reasonable attorney's fees [citations], compensation for injury to his reputation or impairment of his social and business standing in the community [citations], and for mental or emotional distress [citation].

"The judicial process is adversely affected by a maliciously prosecuted cause not only by the clogging of already crowded dockets, but by the unscrupulous use of the courts by individuals ' . . . as instruments with which to maliciously injure their fellow men.' [Citation.]" (Fn. omitted.)

Given the substantial harm caused by misuse of the judicial process, it is not surprising that courts have consistently found that free access is subser-

vient to the interest of compensating the victims of malicious prosecution. Most notably, while Civil Code section 47, subdivision (2), protects litigants from tort liability which may be predicated on their participation in judicial and quasi-judicial proceedings, it does not apply to claims for malicious prosecution. (*Oren Royal Oaks Venture* v. *Greenberg, Berhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157 [232 Cal.Rptr. 567, 728 P.2d 1202]; *Albertson* v. *Raboff* (1956) 46 Cal.2d 375 382 [295 P.2d 405].) In *Albertson* the court explained this exception: "It may be noted at the outset that the fact that a communication may be absolutely privileged for the purposes of a defamation action does not prevent its being an element of an action for malicious prosecution in a proper case. The policy of encouraging free access to the courts that underlies the absolute privilege applicable in defamation actions is outweighed by the policy of affording redress for individual wrongs when the requirements of favorable termination, lack of probable cause, and malice are satisfied." *(Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 382.)

Admittedly, the freedom of access considered in *Albertson* was the freedom enjoyed by all civil litigants—not the freedom of contracting parties who are the focus of Code of Civil Procedure section 1060. However, those cases which have considered the freedom to contest contractual liability, which is at the heart of Sequoia's argument, have found that it too is subservient to the interests of preventing willful and unwarranted conduct. (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co.* (1984) 36 Cal.3d 752, 770 [206 Cal.Rptr. 354, 686 P.2d 1158]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376, 395-396 [89 Cal. Rptr. 78, 47 A.L.R.3d 286].) As the court in *Seaman's* said, "Of course, 'it is not a tort for a contractual obligor to dispute his liability under [a] contract' [citation] *if the dispute is honest and undertaken in good faith.* [Citation.]" (*Seaman's Direct Buying Service, Inc.* v. *Standard Oil Co., supra,* 36 Cal.3d at p. 770; italics added.)

Those cases which have gone beyond Civil Code 47, subdivision 2, and barred liability for malicious prosecution, as well as other torts, do not support Sequoia's public policy arguments. In *Pace* v. *Hillcrest Motor Co.* (1980) 101 Cal.App.3d 476 [161 Cal.Rptr. 662], the court held that institution of a small claims proceeding would not give rise to a malicious prosecution claim. In explaining its holding, the court said: "To permit an action for malicious prosecution to be grounded on a small claims proceeding would frustrate the intent of the Legislature in adopting an expeditious and informal means of resolving small disputes, would inject into a simple and accessible proceeding elements of time, expense, and complexity which the small claims process was established to avoid, and would require a prudent claimant to consult with an attorney before making use of this supposedly attorney-free method for settling disputes over small amounts." (*Id.* at p. 479.)

Unlike the small claims statute, there is nothing in the history of Code of Civil Procedure section 1060 which suggests that the Legislature intended to create an informal procedure to resolve minor claims. Indeed the course of Sequoia's declaratory relief action belies such an intention: it consumed several years and involved proceedings in the Supreme Court as well as this court. Unlike the plaintiff in a small claims action, Sequoia was represented at all times by counsel. Thus Sequoia had the opportunity, through the advice of counsel, to protect itself from liability for malicious prosecution. As the court in *Pace* took pains to point out, by design small claims plaintiffs are discouraged from consulting counsel. We note also that the insurance policy which is the subject of Sequoia's complaint may be Camarena's only means of recovering for what he alleges are serious personal injuries. Thus it is plain that Code of Civil Procedure section 1060 is not restricted to minor matters.

Liability for malicious prosecution has also been barred where the prospective plaintiff is the government. (*City of Long Beach* v. *Bozek* (1982) 31 Cal.3d 527 [183 Cal.Rptr. 86, 645 P.2d 137].) In *City of Long Beach* the court found that a claim for malicious prosecution asserted by a governmental agency was inconsistent with the freedom to petition the government provided by both the state and federal Constitutions. (*Id.* at pp. 534-536.) Conversely public prosecutors have been given immunity from malicious prosecution on the grounds that they should not be discouraged from enforcing the law. (*Pearson* v. *Reed* (1935) 6 Cal.App.2d 277, 287 [44 P.2d 592].) Any restriction on Sequoia's ability to sue its insureds would not hinder its right to petition its government. Nor is Sequoia's right to dispute its contractual liability as vital as the duty of public prosecutors to enforce the law.

In sum, there is nothing in the nature of declaratory relief actions which requires that we eliminate any potential liability for malicious prosecution. We believe it is more appropriate to protect access to judicial proceedings by focusing on the requirement that plaintiffs plead and prove malice. (See *Chauncey* v. *Niems, supra,* 182 Cal.App.3d at pp. 978-980.)

## 3. Malice

The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff; it may exist when proceedings are commenced primarily for an improper purpose. (*Albertson* v. *Raboff, supra,* 46 Cal.2d at p. 383.) Nonetheless, the plaintiff in a malicious prosecution action must show that his or her interests were the target of the defendant's improper purpose. (*Hogen* v. *Valley Hospital* (1983) 147 Cal.App.3d 119, 126-127 [195 Cal.Rptr. 5].) In *Hogen* the defendants reported a doctor to the Board of Medical Quality Assurance (BMQA). As

a result of the report BMQA commenced an investigation of both the doctor and a colleague. The colleague, who was not the subject of the defendants' report, then sued the defendants for malicious prosecution. The Court of Appeal affirmed an order sustaining the defendants' demurrer on the grounds that, although the colleague may have been injured by the report, the defendants were not attempting to harm him. (*Ibid.*) The holding in *Hogen* is consistent with our analysis of the public policy considerations which permit maintenance of malicious prosecution actions. By limiting malicious prosecution claims to the targets of malicious conduct, the *Hogen* court protected free access to our courts without impairing the deterrent effect of potential liability to the intended victims of the tort.

Declaratory relief actions often involve persons in much the same position as the plaintiff in *Hogen*—though vitally interested in the outcome of the proceedings, they are not necessarily the focus of the litigation. In this case Camarena was not a party to the insurance contract and neither his conduct nor his obligations were the subject of dispute in Sequoia's declaratory relief action. Camarena may have been named solely because Sequoia, if successful, did not want to relitigate its obligations under the policy. Under these circumstances there is some risk that the potential for claims will restrict access to our courts without necessarily deterring their improper use. Thus we must give special attention to the requirement that Camarena not only show that the defendants acted with malice, but that the malice was directed toward him.

In this case, there is evidence which would support a finding of malice toward James Hunt. On this record Hunt, were he a plaintiff, could argue that Sequoia's allegations of noncooperation were without probable cause. In particular he could rely on the cooperation he did provide and on the fiduciary duties owed to him by Sequoia and counsel. By showing a lack of probable cause, Hunt could infer that the defendants acted with malice toward him. (*Pond* v. *Insurance Co. of North America, supra,* 151 Cal.App.3d 280, 288.)

The implied malice available to Hunt is of no assistance to Camarena. While unsubstantiated claims about Hunt may imply malice toward Hunt, standing alone, they do not imply any malice toward Camarena. Nonetheless in the unusual circumstances of this case, proof of an intent to harm Camarena in particular, sufficient to defeat a motion for summary judgment, may exist. Counsel was retained by Sequoia to defeat Camarena's personal injury claim. From the scope of his retention it may be argued that his conduct was aimed toward reducing Camarena's recovery instead of, or in addition to, depriving James Hunt of the benefits of the Sequoia policy. To the extent counsel's conduct precipitated the declaratory relief action,

it may support a finding of malice toward Camarena. These questions will be for the trier of fact.

We hasten to add that counsel's alleged conduct and the inferences that might be drawn from it are quite rare. Generally, defense counsel do not attempt to defeat their clients' coverage even if it means reducing the amount available to a particular plaintiff. In a more conventional setting, where, unaided by defense counsel, an insurer has filed a declaratory relief action, and named the underlying claimant as a defendant, the same possible inference of malice directed toward the claimant will not arise.

## B. *Favorable Termination*

A termination is favorable when it reflects "the opinion of someone, either the trial court or the prosecuting party, that the action lacked merit or if pursued would result in a decision in favor of the defendant." (*Stanley* v. *Superior Court* (1982) 130 Cal.App.3d 460, 464-465 [181 Cal.Rptr. 878]; see also *Lackner* v. *La Croix* (1979) 25 Cal.3d 747, 750 [159 Cal.Rptr. 693, 602 P.2d 393]; *Minasian* v. *Sapse* (1978) 80 Cal.App.3d 823, 826 [145 Cal.Rptr. 829].) In this case the declaratory relief judgment reflected the opinion of the trial court and this court that Sequoia's position lacked merit.

Nonetheless, Sequoia argues that because Sequoia prayed for a determination of its duties under the policy and in fact received such a determination Camarena cannot show that the action was terminated in his favor. A similar attempt to place the form of termination over its substance was rejected in *Sierra Club* v. *Superior Court* (1985) 168 Cal.App.3d 1138 [214 Cal.Rptr. 740]. In that case the Sierra Club filed a petition against the California Coastal Commission on the grounds that in approving a property development the commission had not used the appropriate legal standard. (*Id.* at p. 1142.) The developers were named as real parties in interest. (*Id.* at p. 1140.) The superior court agreed with the Sierra Club and remanded the matter to the commission for reconsideration of its decision. (*Id.* at p. 1143.) On remand the commission reconsidered its decision in light of the superior court's ruling and again approved the development. (*Ibid.*) Thereafter the superior court denied in its entirety the club's petition. (*Id.* at p. 1144.)

The developers then sued the Sierra Club for malicious prosecution, arguing that because the club's petition had been denied the proceeding had been terminated in the developer's favor. In ordering dismissal of the developer's complaint, the *Sierra Club* court said: "Given the nature of the Club's contention, it is difficult to conclude otherwise than that the Club essentially prevailed on its challenge based on the LCP issue. The Club sought a judicial

determination that the proceedings before the Commission and resultant approval of development were defective under the law, and needed corrective action. By showing that the wrong standard had been applied, and by obtaining the remand for reconsideration, the Club essentially prevailed in the administrative mandate action even though its petition was ultimately denied." (168 Cal.App.3d at p. 1146.)

Here the trial court concluded, as Camarena contended, that Sequoia was not relieved of its obligations under the policy. Sequoia argues that since the declaratory relief action sought a declaration of rights, and such a declaration was made, the suit was successful and did not terminate in Camarena's favor. However, the suit sought a declaration that Sequoia was relieved of its obligations under the policy; and Camarena's answer asked for the opposite conclusion. We conclude that such a result can support an action for malicious prosecution if the suit against Camarena was brought with malice toward him and without probable cause. Our conclusion in this regard is bolstered by Sequoia's own attempts to have the declaratory relief judgment overturned—unless Sequoia was aggrieved by the judgment, it had no standing to seek any appellate review. (*Cicinelli* v. *Iwasaki* (1959) 170 Cal.App.2d 58, 64 [338 P.2d 1005].)

### CONCLUSION

Because Sequoia's declaratory relief proceeding was a prior action which terminated in Camarena's favor, both the judgment in favor of the defendants and the order denying Camarena's motion are erroneous.[2]

Accordingly, the judgment is reversed with instructions to vacate the order denying Camarena's motion and enter an order determining as a matter of law that the declaratory relief proceeding was a prior action which terminated in Camarena's favor.

Wiener, Acting P. J., and Work, J., concurred.

Respondents' petitions for review by the Supreme Court were denied June 25, 1987.

---

[2]While the order denying Camarena's motion for summary adjudication of issues is not appealable, it is reviewable. (*Coast Elevator Co.* v. *State Bd. of Equalization* (1975) 44 Cal.App.3d 576, 585 [118 Cal.Rptr. 818].)