Filed 3/22/16  Siciliano v. Silva CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| JOHN M. SICILIANO, | |
| Plaintiff and Respondent, | E063116 |
| v. | (Super.Ct.No. RIC1411561) |
| PAUL GEORGE SILVA et al., | OPINION |
| Defendants and Appellants. | |

APPEAL from the Superior Court of Riverside County.  Sunshine S. Sykes, Judge. Affirmed.

Louis G. Fazzi for Defendants and Appellants.

Law Offices Beck & Greer and Richard B. Beck for Plaintiff and Respondent.

Plaintiff and respondent John M. Siciliano, an attorney, initiated this action for malicious prosecution against defendants and appellants Paul George Silva, John Thomas Hranek, and Gregory Spencer Mynko.  Defendants filed a special motion to strike the

1

complaint as a strategic lawsuit against public participation pursuant to the Code of Civil Procedure section 425.16.[1] The trial court denied their motion and we affirm.

## I. BACKGROUND

### A. The History of the Parties (Prior Lawsuits).

Beginning in 2007, Siciliano represented Silva, Michael Julian, and Caleb Gilbert in their action against Guaranteed Fitness for breach of contract and fraud in the sale of a gym, *Julian et al. v. Guaranteed Fitness, Inc.*, Riverside County Superior Court case No. RIC465050 (the *Julian* action). Separately, in December 2008, the landlord of the Guaranteed Fitness gym filed an unlawful detainer action for past-due rent against the *Julian* plaintiffs, who were the owners of the gym, *AI HOA Investment Inc. v. Julian et al.*, Riverside County Superior Court case No. TEU004439 (the *AI HOA* action). Julian retained Siciliano to represent him in the *AI HOA* action, while Silva declined to do so. On March 5, 2010, Siciliano sent a letter to Silva informing him that a default had been obtained against him in the *AI HOA* action; he should seek independent counsel relative to that matter; and that "[f]ailure to do so may result in a monetary judgment being obtained against you." Silva admitted receiving this letter about the time that it was drafted. He failed to retain legal representation and a default judgment was entered against him.

In February 2012, the *Julian* plaintiffs prevailed at trial, and thereafter, Siciliano negotiated a confidential settlement on their behalf. As Siciliano began receiving the

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

2

settlement funds into his attorney-client trust account, Gilbert and Silva relinquished their interest in those funds because Julian had assumed sole responsibility for the attorney fees incurred in the action.

On July 2, 2012, Silva retained Siciliano for the limited purpose of "attempt[ing] resolution of the outstanding judgment [in the *AI HOA* action] via a settlement with [the] judgment creditor, Ai Hoa Investment, Inc." The retainer agreement provided that it did "not include any services in any civil court action seeking to set aside the default judgment . . . ." Siciliano engaged in settlement negotiations; however, Ai Hoa Investment, Inc. was unwilling to settle.

About August 2013, Hranek called Siciliano to inform him that he (Hranek) had been retained by Silva to represent him in a divorce. During the call, Hranek stated that Siciliano needed to get Julian to release at least $50,000 of the settlement funds held in Siciliano's trust account from the *Julian* action; otherwise, Hranek would sue Siciliano on Silva's behalf. Siciliano replied by informing Hranek that Julian and Silva were disputing each other's entitlement to the settlement funds, and as such, Siciliano was required to hold those funds pending a resolution of the dispute. Hranek discounted Siciliano's reply, threatening to sue him unless the $50,000 was released.

On October 23, 2013, Julian filed an action for declaratory relief against Silva and Gilbert, seeking to resolve their dispute over entitlement to the remaining settlement funds from the *Julian* action, *Julian v. Silva et al.*, Riverside County Superior Court case No. RIC1312188 (the *Silva* action). Robert P. Karwin represented Julian in this action. On December 10, 2013, Silva filed a verified cross-complaint against Siciliano, asserting

3

causes of action for conspiracy, legal malpractice and breach of fiduciary duty against

Siciliano.[2]  Silva alleged that Siciliano had "advised SILVA not to file a response to the

AI HOA matter," (original underlining) and that "SILVA followed SICILIANO's

recommendation and as a direct and proximate result of the carelessness of SICILIANO,

SILVA suffered a Default Judgment" in "excess of $500,000.00" in the *AI HOA* action.

Silva further claimed that Siciliano and Julian "conspired to place liability for the past

due rent in the AI HOA matter" on Silva.  (Original underlining.)  Silva accused Siciliano

of failing to advise him (Silva) of the default taken against him and failing to "obtain a

written waiver or consent from either SILVA or JULIAN in violation of Rule 3-310 of

the California Rules of Professional Conduct."

On December 20, 2013, Siciliano demurred to Silva's cross-complaint on the

following grounds:  (1) Silva could not plead an attorney-client relationship regarding the

*Silva* action; (2) the statute of limitations applied; (3) conspiracy is not an independent

cause of action; (4) Silva failed to comply with Civil Code section 1714.10, subdivision

(a); and (5) the agent immunity rule applies.  The demurrer was heard on January 28,

2014, with Mynko specially appearing on behalf of Hranek.  The court sustained the

demurrer with leave to amend.  On February 13, 2014, Mynko replaced Hranek as Silva's

attorney of record in the *Silva* action, and the substitution of counsel was filed on May 2,

2014.  On June 17, 2014, Silva filed his first amended cross-complaint adding a claim for

---

**2**  On August 21, 2015, Siciliano requested this court to take judicial notice of 10 specific documents filed in the *Silva* action.  We reserved ruling on the request for consideration with the merits of the appeal.  The request is granted.  (Evid. Code, §§ 452, subd. (d), 459, subd. (a).)

4

unfair business practices and the allegation that Siciliano caused the default judgment through postjudgment settlement negotiations.

On July 9, 2014, Silva was deposed in the *Silva* action. Silva admitted that Siciliano had not represented him during the pendency of the *AI HOA* action; and that Siciliano had informed him (Silva) that (1) he was not being represented by Siciliano; (2) a default had been obtained against him (Silva) in that matter; (3) he (Silva) should not ignore the default because it may lead to a judgment; and (4) he (Silva) should seek independent counsel to represent his interests.

On July 11, 2014, Siciliano demurred to Silva's first amended cross-complaint in the *Silva* action. Siciliano requested judicial notice of the dockets and records in the *Julian* and the *AI HOA* actions. Siciliano reiterated his prior arguments and asserted that the allegations of postjudgment malpractice were baseless and/or untimely. Siciliano challenged the merits of the unfair business practices claim. Siciliano later added that the first amended cross-complaint was frivolous.

On August 7, 2014, the trial court sustained Siciliano's demurrer, without leave to amend, and on October 3, 2014, a judgment of dismissal was entered in Siciliano's favor in the *Silva* action.

## B. The Present Action (Malicious Prosecution).

On December 3, 2014, Siciliano filed this action, asserting malicious prosecution against Silva and his attorneys, Hranek and Mynko, based on their prosecution of Silva's verified cross-action in the *Silva* action. Defendants responded on January 15, 2015, by filing a special motion to strike. They separately requested judicial notice of the records

5

in the *Silva*, *AI HOA*, and *Julian* actions. Defendants argued that their motion applied to Siciliano's malicious prosecution claim and that he could not demonstrate a probability of prevailing because he allegedly had not obtained a favorable termination of Silva's claims in the *Silva* action. Defendants asserted that Siciliano merely obtained a technical victory in the matter because his demurrers were sustained on a statute of limitations ground. Relying on the declarations of Hranek, Mynko, and their current counsel, Louis Fazzi, defendants argued they acted with probable cause and without malice. Silva offered no declaration in support of the motion to strike.

Siciliano opposed defendants' motion to strike, requested to file a brief in excess of 15 pages,[3] requested judicial notice of specific documents, and submitted objections to

---

[3] On July 6, 2015, defendants filed a motion to augment the record on appeal to include a document entitled "Defendants' Motion to Strike 'Opposition to Defendants' Special Motion to Strike' for Failure to Comply with Rules of Court." Siciliano opposed the motion to augment on the ground that the document (motion to strike opposition to special motion) had not been filed or lodged with the trial court as required by California Rules of Court, rule 8.155(a)(1)(A). We reserved ruling on the motion to augment for consideration with the merits of the appeal. The document has an initial stamp date of February 13, 2015, which coincides with the date that defendants filed their reply to Siciliano's opposition to special motion to strike. It is unclear whether the trial court accepted the document and failed to file it, or whether the document was not submitted to the trial court prior to the hearing on the special motion to strike. Nonetheless, in the interest of justice, we grant the motion to augment.

To the extent defendants challenge the trial court's decision to grant Siciliano's request to exceed the 15-page memorandum limit despite the fact that he failed to comply with California Rules of Court, rule 3.1113(f) by failing to include a table of contents, a table authorities, and an opening summary of argument, we reject such challenge. The trial court acted within its discretion in accepting the opposition that did not comply with the applicable rule of court. (*Quantum Cooking Concepts, Inc. v. LV Associates, Inc.* (2011) 197 Cal.App.4th 927, 932 [we review under the abuse of discretion standard whether the trial court was justified in invoking California Rules of Court].)

*[footnote continued on next page]*

6

portions of defendants' declarations. Siciliano disputed the claim that his demurrer in the *Silva* action was sustained primarily on the ground of statute of limitations. He argued that defendants lacked probable cause to file the cross-action because Silva admitted there was no factual support for the allegations. Siciliano asserted defendants acted with malice in prosecuting the cross-action because they sought to force a release of settlement funds obtained in a separate action. Siciliano offered his declaration, his correspondence and retainer agreement with Silva, the transcript of the demurrer hearing in the *Silva* action, and relevant portions of Silva's deposition. Without objecting to Siciliano's evidence, defendants argued that Siciliano could not establish any element of his malicious prosecution claim.

The motion to strike was denied on February 23, 2015. The trial court found that the prior cross-action was terminated in Siciliano's favor and that defendants lacked probable cause to file such action against Siciliano.

## II. DISCUSSION

Defendants claim their special motion to strike the entire complaint was erroneously denied because the "evidence shows that [defendants] had probable cause to file an action against . . . Siciliano for legal malpractice." We disagree.

---

*[footnote continued from previous page]*

Regarding Fazzi's disciplinary record from the website of the California State Bar, the trial court arguably erred in granting judicial notice of the submitted document. This information had precisely nothing to do with the proverbial price of tea in China. However, any error was harmless, as neither the court's ruling, nor our analysis here, are affected by noticing, or not, that information. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1089, fn. 4 [court will not take judicial notice of irrelevant material].)

7

**A. Section 425.16.**

A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish the exercise of the constitutional rights to freedom of speech or to petition the government for redress of grievances. (*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055; *Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1.) In enacting section 425.16 (known as the anti-SLAPP statute) the Legislature created a remedy known as a special motion to strike as a procedural means of disposing of SLAPP suits at the earliest possible stage of the litigation. (*Gerbosi v. Gaims, Weil, West & Epstein*, *LLP* (2011) 193 Cal.App.4th 435, 443.)

Section 425.16 prescribes a two-step process for striking a cause of action. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67.) The court first determines whether the defendant has demonstrated that the allegations of the challenged cause of action or complaint arise from protected activity. (§ 425.16, subd. (b)(1).)[4] The defendant meets this burden by showing that the act underlying the challenged cause of action fits one or more of the categories spelled out in subdivision (e) of section 425.16.[5]

---

[4] Section 425.16, subdivision (b)(1) states: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."

[5] Section 425.16, subdivision (e) provides that, as used in the statute, the phrase, "'act in furtherance of a person's right of petition or free speech'" "includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral

*[footnote continued on next page]*

(*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88 (*Navellier*).)  In making this determination, the court considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability . . . is based."  (§ 425.16, subd. (b)(2).)

If the court finds the defendant has made this initial showing, it proceeds to the second step of the anti-SLAPP analysis and determines whether the plaintiff has demonstrated a probability of prevailing on its claims.  (*Navellier, supra,* 29 Cal.4th at p. 88.)  If, however, the defendant does not meet its burden on the first step, the court must deny the motion and need not address the second step.  (*Ibid.*; *City of Riverside v. Stansbury* (2007) 155 Cal.App.4th 1582, 1594 [Fourth Dist., Div. Two].)  "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute."  (*Navellier, supra,* at p. 89.)

**B.  Standard of Review.**

We review the denial of a special motion to strike de novo, engaging in the same two-step analysis as the trial court.  We first determine whether the defendant met its initial burden of demonstrating that the challenged cause or causes of action constitutes a SLAPP, and if so, we then determine whether the plaintiff met its evidentiary burden of

---

*[footnote continued from previous page]*
statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law, (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest, or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

demonstrating a probability of prevailing on its claims. (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 325.)

**C. Analysis.**

*1. Siciliano's Claims Arise from Protected Activity.*

Malicious prosecution claims fall within the purview of the anti-SLAPP statute. (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 735.) Thus, the first step of the anti-SLAPP analysis is satisfied (*Chavez v. Mendoza* (2001) 94 Cal.App.4th 1083, 1087-1090) and we turn to whether Siciliano established a probability that he would prevail on the merits.

*2. Siciliano Demonstrated a Probability of Prevailing on His Claim.*

A malicious prosecution claim requires that the plaintiff "demonstrate 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in his, plaintiff's, favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations].' [Citations.]" (*Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 871.) For the reasons stated below, Siciliano carried this burden.

a. Favorable termination element.

We begin by considering whether Silva's cross-action in the *Silva* action was terminated in Siciliano's favor. Favorable termination of the prior proceeding is an essential element of the malicious prosecution tort. (*Ray v. First Federal Bank* (1998) 61 Cal.App.4th 315, 318 (*Ray*).) "To determine 'whether there was a favorable termination,' we 'look at the judgment as a whole in the prior action . . . .' [Citation.] 'It

10

is not essential to maintenance of an action for malicious prosecution that the prior proceeding was favorably terminated following trial on the merits.' [Citation.] Rather, '[i]n order for the termination of a lawsuit to be considered favorable to the malicious prosecution plaintiff, the termination must reflect the merits of the action and the plaintiff's innocence of the misconduct alleged in the lawsuit.' [Citation.] For example, a termination is favorable for malicious prosecution purposes where the court in the underlying action: (1) granted summary judgment and issued sanctions because the claim was meritless [citation]; (2) granted summary judgment because there was insufficient evidence to establish a triable issue of fact [citation]; or (3) held that the defendant, as a matter of law, violated no duty to the plaintiff [citation]. [¶] However . . . a 'technical or procedural [termination] as distinguished from a substantive termination' is not favorable for purposes of a malicious prosecution claim. [Citation.] Examples include dismissals (1) on statute of limitations grounds [citation]; (2) pursuant to a settlement [citation]; or (3) on the grounds of laches [citation]." (*Casa Herrera, Inc. v. Beydoun* (2004) 32 Cal.4th 336, 341-342.)

Defendants assert that the trial court's reasons for sustaining Siciliano's demurrer without leave to amend "exemplify technical or procedural grounds, and in no way reflect on the merits of the claims themselves." We disagree. In sustaining Siciliano's demurrer to the initial cross-complaint, the trial court found that the conspiracy cause of action was defective, because Silva had not sought leave of court to sue an attorney for his claim under Civil Code section 1714.10, subdivision (a), and because Siciliano was shielded by the agent immunity rule. Civil Code section 1714.10, subdivision (a), prohibits the

11

unauthorized filing of an action against an attorney for civil conspiracy with a client arising from any attempt to contest or compromise a claim or dispute.  Before any action may be filed, the plaintiff must first commence a special proceeding whereby the trial court determines whether the plaintiff has established a reasonable probability of prevailing in the action.  (Civ. Code, § 1714.10, subd. (a).)  "Failure to obtain a court order where required by subdivision (a) shall be a defense to any action for civil conspiracy filed in violation thereof.  The defense shall be raised by the attorney charged with civil conspiracy upon that attorney's first appearance by demurrer, motion to strike, or such other motion or application as may be appropriate."  (Civ. Code, § 1714.10, subd. (b).)  The agent's immunity rule holds that a "cause of action for civil conspiracy may not arise . . . if the alleged conspirator, though a participant in the agreement underlying the injury, was not personally bound by the duty violated by the wrongdoing and was acting only as the agent or employee of the party who did have that duty."  (*Doctors' Co. v. Superior Court* (1989) 49 Cal.3d 39, 44.)

The trial court granted Silva leave to amend; however, his first amended cross-complaint repeated the same allegations of the original cross-complaint.  Because Silva failed to allege the facts necessary to support a conspiracy cause of action, or seek leave of court to sue Siciliano for conspiracy, Siciliano again demurred to this cause of action for the same reasons offered in his first demurrer.  The trial court sustained the demurrer without leave to amend.  While the court's minute order fails to state the basis for its ruling, given that the conspiracy allegations in the amended pleading were identical to the conspiracy allegations in the original pleading, it is reasonable to assume that the trial

12

court adopted and applied its prior reasoning.  Moreover, Silva was aware of the trial court's tentative ruling to grant the demurrer without leave to amend, but failed to request oral argument.  Accordingly, Siciliano received a favorable termination.  (*Berman v. RCA Auto Corp.* (1986) 177 Cal.App.3d 321, 325 [termination through the immunity of the litigation privilege constitutes a favorable termination].)

Regarding Silva's claim for unfair business practices, Siciliano asserted that he was protected by the agent immunity rule and that he could not commit an unfair business practice against a nonclient by settling a matter on his own client's behalf. Siciliano did not assert any statute of limitations defense to this cause of action. Regarding Silva's claim for breach of fiduciary duty, the trial court found that Silva had failed "to explain the nature of the fiduciary duty that was breached" by Siciliano.  In other words, Silva failed to allege an essential element of this cause of action.  While the court cited the statute of limitations as the reason for sustaining the demurrer to Silva's claim for legal malpractice, Siciliano defeated the other three causes of action on their merits.  The court's limited ruling on the legal malpractice claim alone is insufficient to bar the instant action.

For the above reasons, Siciliano made a prima facie showing that Silva's cross-action was terminated in Siciliano's favor.

b. Probable cause element.

"The question of probable cause is 'whether, as an objective matter, the prior action was legally tenable or not.'  [Citation.]"  (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 292.)  "The probable cause determination is objective and is based

13

on the facts known to the malicious prosecution defendant at the time the action was initiated or prosecuted.  [Citation.]  Probable cause is a low threshold designed to protect a litigant's right to assert arguable legal claims even if the claims are extremely unlikely to succeed.  [Citations.]"  (*Uzyel v. Kadisha* (2010) 188 Cal.App.4th 866, 926-927, fn. omitted.)  However, "[a] litigant will lack probable cause for his action if he relies upon facts which he has no reasonable cause to believe to be true, or seeks recovery upon a legal theory which is untenable under the facts known to him."  (*Leonardini v. Shell Oil Co.* (1989) 216 Cal.App.3d 547, 568 (*Leonardini*).)  Moreover, a malicious prosecution action can be founded on a single cause of action that lacks probable cause, even when it is accompanied by other causes of action that do *not* lack probable cause.  (*Crowley v. Katleman* (1994) 8 Cal.4th 666, 677-679.)

Here, the record supports a finding that Silva lacked probable cause to file or maintain his cross-action against Siciliano.  In his deposition, Silva admitted that he never retained Siciliano to represent him in the *AI HOA* action prior to the entry of his default, and that he was fully aware that his co-defendant Julian was "going on his own." Silva acknowledged he had received Siciliano's March 5, 2010 letter about the time it was dated and that he was aware of its contents.  The letter informed Silva that a default had been obtained against him, that he should not ignore it, that Silva was unable to retain Siciliano to represent him in this matter, and that Siciliano would not be representing Silva.  Silva admitted that he failed to retain counsel to represent him in the *AI HOA* action, claiming that he was waiting to be served.  "[A] person could have no reasonable

14

expectation of being represented by an attorney after the attorney's explicit refusal to undertake representation." (*People v. Gionis* (1995) 9 Cal.4th 1196, 1211.)

Given Silva's admissions, there was no probable cause to file a cross-action against Siciliano alleging that (1) Siciliano "fail[ed] to advise" Silva about the default taken against him in the *AI HOA* action, (2) Siciliano had advised Silva "not to file a response to the *AI HOA*" action, and (3) Silva followed Siciliano's advise resulting in Silva suffering a default judgment in excess of $500,000. Moreover, Silva verified the allegations in his cross-action, affirming that he "under[stood] that [he was] . . . verifying the facts or the assertions contained in the [cross-]complaint under penalty of perjury." Based on Silva's deposition testimony, he had no reasonable cause to believe the allegations to be true. (*Leonardini*, *supra*, 216 Cal.App.3d at p. 568.)

Hranek also lacked probable cause to prosecute Silva's cross-action against Siciliano because he (Hranek) lacked evidence supporting any belief that Siciliano actually represented Silva in the *AI HOA* action. In support of Silva's special motion to strike Siciliano's complaint, Hranek declared that "it was [his] understanding that Mr. Siciliano continued to represent or offer legal advice to Mr. Silva during the course of the [*AI HOA*] action . . . and that Mr. Siciliano failed to attend a judgment debtor's examination with Mr. Silva, failed to provide any counsel to Mr. Silva or advise him he was not representing his interests, for the judgment debtor's examination . . . ." Although Hranek's initial "understanding" that Siciliano represented Silva in the *AI HOA* action may have supported Silva's cross-action against Siciliano, after Siciliano demurred to the original cross-complaint by showing that he did not represent Silva, Hranek could no

15

longer claim that he possessed a good faith belief that Silva could make a tenable claim against Siciliano. (*Zamos v. Stroud* (2004) 32 Cal.4th 958, 971, 973 [malicious prosecution includes continuing to prosecute a lawsuit discovered to lack probable cause].)

As to Mynko, he specially appeared at the January 28, 2014, hearing on Siciliano's demurrer to Silva's initial cross-complaint. He later substituted in as counsel for Silva and filed the amended cross-complaint. In support of Silva's special motion to strike Siciliano's complaint, Mynko has failed to provide any evidence demonstrating that he possessed probable cause to file the amended cross-complaint. According to Mynko's declaration, Silva retained Mynko on February 13, 2014, and Mynko filed the amended cross-complaint on February 17, 2014. However, due to a procedural mishap, the actual filing date was June 17, 2014. There is no evidence that Mynko conducted any investigation to ascertain probable cause to support Silva's cross-action. Moreover, after attending Silva's deposition on July 9, 2014, wherein Silva admitted that Siciliano had told him about the default judgment in the *AI HOA* action and that Siciliano was not representing him, Mynko proceeded to oppose Siciliano's demurrer to the amended cross-complaint, calling Siciliano's contentions "frivolous."

Siciliano made a sufficient prima facie showing that defendants lacked probable cause to bring the underlying action.[6]

---

[6] Defendants' reliance on Rules of Professional Conduct rule 3-310 is misplaced. Rule 3.310 prohibits attorneys from accepting, without the client's informed written consent, "employment adverse to the client or former client where, by reason of the

*[footnote continued on next page]*

16

### c. Malice element.

"The malice required in an action for malicious prosecution is not limited to actual hostility or ill will toward plaintiff; it may exist when proceedings are commenced primarily for an improper purpose. [Citation.] Nonetheless, the plaintiff in a malicious prosecution action must show that his or her interests were the target of the defendant's improper purpose. [Citation.]" (*Camarena v. Sequoia Ins. Co.* (1987) 190 Cal.App.3d 1089, 1097.) One such improper purpose includes a situation where the proceedings "are initiated for the purpose of forcing a settlement which has no relation to the merits of the claim." (*HMS Capital, Inc. v. Lawyers Title Co.* (2004) 118 Cal.App.4th 204, 218.)

Here, Hranek, on behalf of Silva, threatened to sue Siciliano regarding the *AI HOA* action if he did not get Julian to release $50,000 of the settlement funds obtained in the *Julian* action. Those settlement funds were the subject of an ongoing dispute as to who should receive them and how they should be divided: they had no relation to the *AI HOA* action. Mynko maintained Silva's cross-action even after Silva's deposition wherein his testimony undermined the allegations in his cross-action. In short, Siciliano presented sufficient evidence that defendants acted with malice in filing the underlying litigation.

---

*[footnote continued from previous page]*
representation of the client or former client, the [attorney] has obtained confidential information material to the employment." (Cal. Rules of Prof. Conduct, rule 3.310(E).) Here, the *Julian* and the *AI HOA* actions were not substantially related: they were independent of one another, involving different parties and different claims. There is no evidence that Siciliano disclosed to an adversary, let alone possessed, any alleged confidential information. In support of his demurrer, Siciliano relied on the two separate actions. Moreover, defendants only reference rule 3.310 in their legal malpractice cause of action which was dismissed on statute of limitations grounds.

### III.  DISPOSITION

The order denying defendants' special motion to strike is affirmed.  Plaintiff and Respondent Siciliano shall recover his costs on appeal.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS


                                       HOLLENHORST

                                                 Acting P. J.

We concur:

MILLER

                    J.

CODRINGTON

                    J.